**Dock M. PERRY, Plaintiff In Error,**

**v.**

**A. B. GREEN, Defendant In Error.**

**No. 42453.**

Supreme Court of Oklahoma.

April 14, 1970.

Rinehart, Morrison & Cooper, Oklahoma City, for plaintiff in error.

Watts, Looney, Nichols & Johnson, Oklahoma City, for defendant in error.

LAVENDER, Justice.

This appeal, by the plaintiff in an action against the defendant in error herein, as the defendant, for damages resulting from alleged negligence on the part of the defendant, involves an order of the district court sustaining the defendant's motion for summary judgment.

Summary judgment is provided for in Rule 13 of the rules of this court for the district courts of this state. Insofar as pertinent herein, that rule (divided herein for easier reading) provides:

"A party may move for judgment in his favor where the deposition(s), admission(s), answers to interrogatories and affidavits on file show that there is no substantial controversy as to any material fact. * * *

The court shall render judgment if it appears that there is no substantial controversy as to any material fact and that any party is entitled to judgment as a matter of law.

If the court finds that there is no substantial controversy as to certain facts or issues, it shall make an order specifying the facts or issues which are not in controversy and direct that the action proceed for a determination of the other facts or issues. * * *."

In addition to the plaintiff's petition, the defendant's answer, and the plaintiff's reply to the answer, a deposition of the plaintiff, Dock M. Perry, taken by the defendant, was on file in the case when the defendant's motion for summary judgment was filed. The plaintiff filed no affidavit or other materials in opposition to such motion, as authorized by an unquoted portion of Rule 13.

The plaintiff's petition alleges that he was employed as a laborer on the defendant's ranch and, on a specified date, had, under the direction of the defendant and

his agents, servants and employees, climbed a 16-foot ladder for the purpose of making repairs on a barn structure located on premises owned by the defendant; that, while so engaged, the ladder slipped, causing the plaintiff to fall to, and strike, the ground, thus causing the damages complained of by the plaintiff; that the slipping of the ladder, furnished to the plaintiff by the defendant, and his fall, injuries and damages, were the direct and proximate result of the defendant's negligence, in the following particulars: (a) Failure to furnish the plaintiff with a safe place to perform his work; (b) Failure to furnish the plaintiff with safe tools and equipment for the performance of the work assigned; (c) Failure to erect and place the ladder, furnished to the plaintiff for such purpose, in such a manner as to give proper and adequate protection to the plaintiff as required by 40 O.S.1961, § 174; (d) Failure to warn the plaintiff of the dangers associated with the use of the ladder and mechanical contrivances furnished by the defendant; and (e) Failure to adequately secure the ladder furnished by the defendant for use by the plaintiff.

In addition to a general denial, the defendant's answer pleaded (1) That the accident in question was caused by the negligence and carelessness of the plaintiff, which negligence and carelessness constituted contributory negligence; (2) That the accident was an unavoidable casualty or misfortune, which could not have been avoided by the defendant in the exercise of ordinary care; (3) That the defendant was not negligent in any way and the sole cause of the accident was the negligence of the plaintiff; (4) That the plaintiff assumed the risk of all known and obvious hazards; and (5) That, if the ladder furnished by the defendant was faulty in any way (which is specifically denied by the defendant), it was open and obvious for all, in particular this plaintiff, to see, and the plaintiff is barred from any recovery based thereon.

The plaintiff's reply was a general denial of all allegations inconsistent with the allegations of his petition.

The following statements are derived from the plaintiff's deposition as filed in the case:

The incident in which the plaintiff was injured occurred while the plaintiff was standing on a ladder, pulling a nail from what he referred to as a "weather-strip" that had been installed, horizontally, approximately 15 feet above the ground, above a wide doorway in a 21-foot-high barn on the defendant's ranch near Purcell, Oklahoma.

The weather-strip was made of "roof-tin" and projected out from the face of the barn about four inches and then turned downward, for about five or six inches, in front of metal tracks above the doorway, from which two "sliding" doors were to be hung. Nails holding the weather-strip to the barn went through a narrow, vertical lip on the weather-strip, just above the projecting part of the weather-strip. This made it impossible to remove the nails by pulling straight down on a hammer-handle, so he was using his claw-hammer "sideways."

The ladder being used by the plaintiff actually was the upper section of a two-section, aluminum, extension ladder that the defendant had acquired and brought to the ranch two or three years before the accident. Such upper section was 16 feet long, and was 16 or 18 inches wide, uniformly, from end to end. Its side-rails, or legs, were "hollow" and open at the bottom ends, but the upper ends were rounded and closed and covered with rubber-like material. The lower section (which the defendant's superintendent was using at the time for the same purpose and in the same way) was one or two inches wider than the upper section, and, unlike the upper section, had hinged, corrugated rubber, or corrugated aluminum, "shoes" on the bottom ends of the legs to keep the ladder from slipping away from whatever the ladder might be

leaning against. The legs of the upper section would fit into channels on the lower section to form an extension ladder.

At the time of the accident, the plaintiff had worked for the defendant, off and on, for about 17 years, doing carpenter work, laying blocks, and finishing concrete on filling stations being constructed by the defendant, and on the defendant's ranch where the accident happened, averaging about 150 days, or better, a year, except for one year, during that period.

The plaintiff had used this extension ladder, or one or the other section of it, two or three times a week, most weeks, during the two or three years that the defendant had had the ladder at the ranch, and had used one section or the other, separately, just about as often as he had used the two sections together. The usual procedure was to separate the two sections when two people needed a ladder at the same time, but, if only one section was being used at any time, the usual procedure was to use the lower section because it was "safer." No one had ever warned the plaintiff not to use the upper section separately, and he had never warned any one else not to do so, because he did not consider it to be dangerous.

About eight o'clock on the morning of the accident, the defendant's superintendent, Cecil Clark, had told the plaintiff to come on out to the ranch when he finished some work he was doing in the defendant's shop in Purcell, and they would tear down the weather-strip (which, like the barn doors, had been damaged by a storm, and needed to be replaced). The plaintiff finished that work and arrived at the barn approximately ten minutes before the accident occurred about eleven o'clock a. m.

When he arrived at the barn, Mr. Clark was up on the lower section of the extension ladder and had either started pulling nails from the weather-strip or was just about to start doing so, and the upper section of the extension ladder was down on the ground. Without any further instructions from Mr. Clark, or any one else,

the plaintiff picked up the upper section of the extension ladder, placed it against the barn, in front of the doorway, about eight or nine feet, to the right, from the other ladder, with the rounded, rubber-covered upper ends of the legs just above the weather-strip, and the open, lower ends of the legs on the ground about three or four feet out from the barn, climbed the ladder and started pulling nails from the weather-strip with his own claw-hammer. There was nothing whatsoever wrong with his hammer.

The accident occurred while he was pulling either his second or third nail—he didn't remember which. The ladder had remained in position, at the bottom and at the top, while he climbed it, and did not move at all until the accident occurred.

The plaintiff was wearing composition-soled shoes, and, while he was working, had both feet on one rung of the ladder, probably the fourth one from the top, but, at any rate, his shoulders were just about on a level with the top of the ladder.

Concerning his fall and the nail involved in the accident, the plaintiff testified as follows:

"A. * * * I got my claw hammer set good, then I catch like this and give that hard pull. Well, now that nail either broke, either pulled off, or it could have been a slick nail, see. What we was pulling was them screw-type roofing nails which is the hardest nail there are to pull; they are the hardest you can pull, and any carpenter will tell you that. Well, it pulled; I held onto my ladder, and I turned it, see. The ladder started like this. Then, during the time, this started coming down, and my legs went in like that.

"Q. Went in toward the barn?

"A. Yes, inside of the barn there. I was pulled loose; I was just gripping these two big aluminum pieces, and a man couldn't grip those to swing his weight, you see.

"Q. So the ladder turned sideways, then?

"A. Yes, it turned over.

"Q. Your feet swung into the barn?

"A. Inside. Then, there was that runway mat there.

"Q. You were hanging onto the right side of the ladder?

"A. Yes. I was on the right side like that. Of course, if you turned it over, it would be on the left side then, if you was looking at it the same way.

"Q. Which hand were you hanging on it with? With the left hand?

"A. With the left hand. My claw hammer was in the right, see.

"Q. Go ahead.

"A. Then, when I went in there, I couldn't get hold—I couldn't hold it any longer on account of it was too big. Then, that throwed me clear inside. In other words, my leg was that far inside the building, as far as the runway mat, where it hit, see. Then, it hit this one first, this one next. During that time this ladder was turning, then it turned me up that high, and this shoulder went in the concrete; it went in the concrete.

"Q. Your right shoulder hit the concrete?

"A. Hit the concrete. The left leg hit first, then the right on that runway mat. Then my shoulder went on into the ground.

"Q. Now, did the ladder fall completely to the ground?

"A. Yes. It come and followed me right on down. I let go of it; these legs went right through the rungs, and Mr. Clark, he come right down his ladder and pulled me back and got my legs out of it, straightened me out, until the ambulance come, see. I was right on it. See, I was like that and my legs hadn't got fell over until the ladder fell on my knee and my legs went right in between them, in that part. That's really about all there are to that part of it."

The plaintiff also stated that there was nothing wrong with the ladder he was using, insofar as materials and workmanship were concerned; that the ladder did not break; and that his fall was the result of the sudden shifting of his weight when the nail broke, or the head came off of it, or it came out suddenly.

The defendant contends that these sworn statements by the plaintiff, in his deposition, and the inferences which reasonably may be drawn therefrom, clearly establish that the plaintiff's fall and consequent injuries were not the result of any negligence on the part of the defendant, and that, therefore, as a matter of law, the defendant is entitled to judgment. We agree.

40 O.S.1961, § 174 (which the plaintiff alleges, in paragraph "c" of his specifications of negligence, the defendant violated) requires that any person, firm or corporation, in this state, erecting or constructing any scaffold, hoist, crane, stay, ladder, support, or other mechanical contrivance for use in the erection, repairing, alteration, removal or painting of any house, building, bridge, viaduct, steel tank, standpipe, or other structure, shall erect and construct the same "in a safe, suitable, and proper manner," and shall so erect, construct, place and operate the same "as to give proper and adequate protection to life and limb of any person or persons employed or engaged thereon."

We believe that all reasonable men, in the exercise of a fair and impartial judgment, would have to conclude, from the facts stated in the plaintiff's deposition, and the inferences which reasonably could, and should, be drawn therefrom, that the only connection between the ladder involved herein and the plaintiff's falling and being injured as a result of his fall, lies in the fact that he happened to be up on this ladder—rather than up on some other ladder, or up on a scaffold or other contrivance mentioned in 40 O.S.1961, § 174, supra, or on the ground—when a nail's unexpected lack of resistance to the force being exerted by him on the handle of his claw-

hammer, in pulling the nail from the barn and weather-strip involved herein, caused him to lose his balance and fall sidewise to the ground.

We think that all reasonable men, in the exercise of a fair and impartial judgment, would have to conclude, from such facts and inferences, that neither the top ends of the legs of the ladder nor the bottom ends of the legs of the ladder had moved at all, in any direction, prior to the time that the ladder pivoted on one of its legs; that the ladder did not pivot on one of its legs until the plaintiff had started falling sidewise; and that such pivoting did not result from any defect in the ladder or from the manner or place in which it was being used by the plaintiff, but resulted from the plaintiff grabbing one of the legs of the ladder while he was falling sidewise and downward.

Furthermore, it appears to us that all reasonable men, in the exercise of a fair and impartial judgment, would have to conclude, from the facts stated in the plaintiff's deposition, and the inferences which reasonably could, and should, be drawn therefrom, that there were no defects whatsoever in the ladder furnished to the plaintiff by the defendant; that neither the manner in which such ladder had been constructed, nor its width, nor its length, nor the fact that the bottom ends of its legs were open and were not equipped with any special kind of anti-skid device, nor the manner or place in which the plaintiff chose to set the ladder up, and did set the ladder up, for his own use in doing his work, nor any movement of the ladder, or any part thereof (including the pivoting of the ladder on one of its legs), nor the fact that the ladder had not been secured in such a way as to prevent any movement of any part of it while the plaintiff was up on the ladder doing his work, was the direct and proximate cause of the plaintiff's falling and being injured. In such circumstances, the defendant could not have been guilty of *actionable* negligence in failing to warn the plaintiff of the dangers, if any, which might be associated with using such a ladder in the manner that he was intended to, and did, use this ladder in the performance of his work.

From all of this, it follows that the defendant clearly was not guilty of *actionable* negligence (if he was guilty of any negligence) in any of the particulars alleged in paragraphs "b," "c," "d," and "e," of the plaintiff's specifications of negligence, and, as to those particular issues of fact, there was no substantial controversy.

Apparently, the plaintiff concedes this much, for his entire argument against the trial court's action in sustaining the defendant's motion for summary judgment is based upon a contention to the effect that, in spite of the facts stated in the deposition, and the inferences which all reasonable men would have to draw therefrom, there remains a substantial question as to whether or not the equipment furnished by the defendant to the plaintiff was reasonably "suited" to the work to be done by the plaintiff.

Since a ladder was the only equipment furnished by the defendant to the plaintiff for doing his work, and the plaintiff, in effect, concedes that this particular ladder was reasonably safe for use as a ladder in the manner and place in which the plaintiff was using it as a ladder, we assume that this contention by the plaintiff involves paragraph "a" of the plaintiff's specifications of negligence—failure of the defendant to provide the plaintiff with a safe "place" to work.

Without citing any Oklahoma case involving the rendition of summary judgment under Rule 13, supra, the plaintiff cites a number of cases from other jurisdictions for principles which are set forth in Flick, Administratrix v. Crouch et al. (1967), Okl., 434 P.2d 256. In that case, after stating that Rule 13, supra, is patterned after Rule 56 of the Federal Rules of Civil Procedure, this court said, at page 262:

"* * * The object of that rule is to avoid a useless trial, and a trial is not only useful but absolutely necessary where there is a genuine issue as to any material fact. On motion for summary

judgment there can be no trial of fact issues since its function is to determine whether there are any genuine issues as to material facts. Such motion should therefore be denied if under the evidence reasonable men might reach different conclusions from undisputed facts. Michel v. Meier, D.C., 8 F.R.D. 464; Neff v. World Pub. Co., 8 Cir., 349 F.2d 235."

■ We think that, stated in more detail, the principle mentioned in the last-quoted sentence would be as follows: A motion for summary judgment, under Rule 13 of this court's uniform rules for the guidance of the district, superior and common pleas courts of this state, as adopted on March 15, 1965, should be denied if the facts concerning any issue raised by the pleadings, as set forth in the depositions, admissions, answers to interrogatories, and affidavits on file in the case when such motion is filed, and as set forth in affidavits thereafter filed in opposition to such motion and meeting the requirements of said Rule 13, are conflicting, or if reasonable men, in the exercise of a fair and impartial judgment, might reach different conclusions from undisputed facts concerning any issue as set forth in such instruments.

We have, hereinabove, applied that principle to the facts set forth in this plaintiff's deposition which relate to the issues raised by paragraphs "b," "c," "d," and "e," of the plaintiff's specifications of negligence.

■ We also believe that all reasonable men, in the exercise of a fair and impartial judgment, would have to conclude—from the facts stated in the plaintiff's deposition, the inferences which reasonably could, and should, be drawn therefrom, and the application of common knowledge concerning ladders, the purposes for which they are ordinarily used, and the usual and ordinary manner of using them for such purposes —that the ladder being used by this plaintiff not only was a reasonably safe tool or equipment to be used by the plaintiff in the performance of the work he was doing, but, when set up and used in the manner in which this plaintiff was using this ladder at the time in question, also constituted a suitable and reasonably safe place for this plaintiff to perform the work he was doing at the time of his alleged injuries. Clearly, the defendant was not guilty of *actionable* negligence (if he was guilty of any negligence) in the particular stated in paragraph "a" of the plaintiff's specifications of negligence.

Under the views expressed herein, the issues of contributory negligence and assumption of risk, raised in the defendant's answer, become wholly immaterial. Consequently, it is unnecessary for us to consider the plaintiff's argument that, under Section 6 of Article 23 of the Constitution of the State of Oklahoma, those issues must be left to a jury.

Under the pleadings and the deposition on file in this case, there was no substantial controversy as to any material fact and, as a matter of law, the defendant was entitled to judgment. In such circumstances, the trial court did not err in sustaining the defendant's motion for summary judgment. Rule 13, supra; Purvis v. Midwest City (1969) Okl., 450 P.2d 890.

Order affirmed.

IRWIN, C. J., BERRY, V. C. J., and WILLIAMS, BLACKBIRD, HODGES and McINERNEY, JJ., concur.

DAVISON and JACKSON, JJ., dissent.