**Mr. Fred SIVIA et al., Appellees,**

v.

**Mrs. Walter T. (Daisy) SNYDER et al., Appellants.**

**No. 45748.**

Court of Appeals of Oklahoma, Division 2.

July 24, 1973.

Rehearing Denied Sept. 11, 1973.

Certiorari Denied Dec. 18, 1973.

Approved for Publication by Supreme Court Dec. 27, 1973.

Eugene Kuntz and Jerry A. Warren, McAfee, Taft, Cates, Mark, Bond & Rucks, Oklahoma City, for appellees.

Robert J. Emery and James C. Chandler, Lytle, Soule & Emery, Oklahoma City, for appellants.

BACON, Judge.

This appeal involves an action originally brought by the Liberty National Bank and Trust Company of Oklahoma City, Oklahoma (trustee) for instructions as a trustee on how the trust estate should be distributed.

The record reflects and the parties stipulated to the following facts. Frank Bacon Hathaway (settlor) created a living trust in November of 1964 and amended it last in December 1965. The provisions of the trust that are decisive read as follows:

"3.03 *Payments upon the Death of Settlor.* Upon the death of the settlor, the trustee shall pay all of the expenses of the last illness, the funeral, all debts of the settlor due and owing at the date of settlor's death, and all of the expenses of the administration of the estate of the settlor, including all estate, inheritance, transfer and succession or other taxes, whether state or federal, which may be assessed as a result of the death of the settlor with respect to the value of any property, whether or not included in this residuary estate but included in the gross estate of settlor for the purpose of determining the amount of such taxes, including the taxable value of all policies of insurance on the life of the settlor and of all transfers, powers, rights or interests includable in the estate of the settlor for the purpose of such taxes and duties. Payments hereunder shall be charged to principal and not to income.

:     .     .     .     .     .

"3.06 *Special Distributions. After all of the provisions of the preceding paragraphs of this trust agreement have been complied with, the trustee shall distribute the residue* of said residuary trust estate, together with any accumulated and un-

distributed income therefrom, to the following persons in equal shares:

Mrs. Walter T. (Daisy) Snyder

Mrs. Thos. W. (Marion Daisy) Kaehler

Mrs. Eugene (Sara Betty) Rock

Miss Olive Sivia

*If any of said persons named in this paragraph shall not be living on the distribution date herein provided for but shall leave issue surviving on such date, then the trustee shall distribute such person's share to her issue per stripes and not per capita, but if there be no such issue surviving on such date, then such deceased person's share shall be distributed in equal shares to the surviving named persons in this paragraph, or to such deceased person's issue, per stripes and not per capita, as the case may be."* (emphasis ours)

Settlor died May 10, 1968. All bills were paid pursuant to the terms of the trust and all tax returns were filed and taxes shown thereon to be due were paid in June of 1969. However, the IRS proposed additional taxes in April of 1970 (which were ultimately paid in September and October 1970). Trustee protested the additional taxes and decided to proceed with distribution of the trust, maintaining a reserve for payment of the proposed additional tax. Trustee executed an agreement with the beneficiaries by which they were to pay pro rata excess tax, if any, over the reserve. Certain securities certificates were then transferred by trustee to transfer agents preparatory to distribution of the trust properties. However, before the partial distribution was made, one of the beneficiaries, Miss Olive Sivia, died without issue on August 15, 1970. Then as previously indicated, in September and October of 1970, trustee paid the additional estate tax.

Trustee recognized the possibility, or fact, of a conflict as to construction of the trust langauge in §§ 3.03 and 3.06 and filed its petition asking the trial court to construe the term "distribution date" and to determine whether Miss Sivia survived such "distribution date" so as to allow her estate to participate in the trust residue. Miss Sivia's brother, Fred Sivia, who was her sole heir, and the administratrix of her estate were joined as party defendants along with the other three surviving beneficiaries named in the trust. The three named surviving beneficiaries (hereinafter referred to as appellants) filed an answer to defeat any interest claimed by Fred Sivia and Miss Sivia's estate (hereinafter referred to as Fred Sivia), contending "distribution date" as used in the trust had no meaning other than the date the residue was actually distributed. Thus appellants' position was that Miss Sivia's interest never vested because she died prior to the date the residue was actually distributed.

Fred Sivia filed an answer alleging in effect that the "distribution date" could mean the date on which trustee was authorized to make distribution, but further urged the term itself should be void for ambiguity. He urged the court to construe the trust instrument to mean Miss Sivia's share vested immediately upon settlor's death or alternatively within a reasonable time after settlor's death. Thus Fred Sivia's position was that even though Miss Sivia died prior to actual distribution, her interest had previously vested and that he was therefore entitled to her interest as her sole heir.

Both appellants and Fred Sivia filed motions for summary judgment supported by affidavits. The trial court found Miss Sivia's interest vested upon settlor's death and allowed her interest to go to Fred Sivia. Appellants are appealing from that judgment.

An examination of the cases and authorities reveal that there have been many controversies involving a question similar to the one at bar, although the wording may vary slightly and although the provisions are most frequently in wills. It is clear that the construction of the clause should be the same whether it be in a will or in a

trust such as the one here under consideration.

█ The weight of authority among American courts is that a provision for a gift over in the event of the first taker's death before payment of the legacy is valid, and that it should be construed as referable to death before the legacy is de jure payable rather than death before actual receipt of the legacy, unless the testator has clearly expressed a contrary intent. This conclusion is supported by numerous cases annotated in 142 A.L.R. 136 (1943). The encyclopedias also indicate that this is the general rule. See 57 Am.Jur. Wills § 1250 (1948).

Oklahoma has twice decided cases which touched upon the issue at hand. Neither case, however, decided the precise question, that is construction of "distribution date" in the circumstances herein encountered.

While somewhat distinguishable, Lee v. Want, Okl., 369 P.2d 177 (1962), is cited by appellants as authority for their proposition that "distribution date" means the date of actual receipt of payment. In this case, the trust provided that if any of five beneficiaries died without issue "prior to receiving payment" then his share was to be divided equally among surviving beneficiaries. Construction of this clause was not an issue before the court. However, in determining the issue of whether a beneficiary's son's interest vested when the father died or whether the son had to survive until distribution, the court necessarily interpreted "distribution" to be actual distribution. At any rate, the case is further distinguishable since by the terms of the trust a sale had to be made before distribution and distribution therefore could be, and was, delayed several years.

Fred Sivia argues that the earlier case of Dannenburg v. Dannenburg, Okl., 271 P.2d 345 (1953) is controlling here. The court in Dannenburg construed a will in which the testatrix provided a gift over "[i]n the event any of the beneficiaries . . . die before receiving the full amount of his or her legacy . . . .."

The court held that "receiving" was susceptible to several different meanings and that there was nothing in the will to indicate what the testatrix intended. They noted that the paragraph was separate and unrelated to the other paragraphs making gifts, in which she used words of absolute gift when referring to the legacies. The court concluded that the paragraph containing the "receiving" clause was inconsistent with the words of absolute gift, making it ambiguous and therefore void. This was a five-four decision with a vigorous dissent, the main thesis of which was that "receiving" is a common English word, not ambiguous, and that it should be taken in its ordinary, grammatical sense in accord with 84 O.S.1951 § 158. The author of the dissent further did not interpret the prior paragraphs as containing words of absolute gift, except as to the trustee, concluding that the testatrix's clear intent was that it be a future gift, and that the provision was in the nature of a condition precedent authorized by 84 O.S.1951 §§ 179, 180 & 181.

█ Turning to the present case, we do not see how "distribution date" in paragraph 3.06 of the trust could be intended by the settlor to mean his date of death. Paragraph 3.03 provides certain payments to be made upon the death of the settlor, but paying to the beneficiaries their share of the trust estate is not one of those payments. The settlor clearly provided in paragraph 3.06 that the legacies are to be distributed "after all of the provisions of the preceding paragraphs of this trust agreement have been complied with," which necessarily must be at some date *after* the settlor's death since the instructions of the preceding paragraphs involve a considerable amount of time-consuming procedures, particularly in a large estate such as this one. In addition, the distribution date of an estate is never the same date as the settlor's or testator's date of death. The settlor chose to use "distribution date" and to hold he meant "date of death" would be to give "distribution date"

an interpretation contrary to its ordinary meaning.

There are then two remaining possibilities (which were pleaded) : (1) the date of actual distribution of the trust residue (as appellants contend) or (2) de jure distribution, i. e., the date on which the trustee could first have made distribution (pleaded alternatively by Fred Sivia). The second construction seems to comport more nearly with what the settlor most likely intended. He would hardly desire the beneficiary's enjoyment of his gift to depend upon accident, delay, inconvenience or any number of unpredictable occurrences such as the delays caused by the vacations of IRS agents assigned to the case or their disputed interpretation of the tax laws applicable to the present estate. We therefore choose to follow the majority view, and the more practical one, that vesting in these circumstances takes place on the first date the legacy could reasonably be paid by the trustee, which was when all the provisions of the trust had been complied with, with the exception of payment of the additional tax, for which a fund was set aside. This date of course was prior to the death of Miss Sivia. To hold otherwise would be to find that the settlor, by using "distribution date" in the trust, provided for such unpredictable occurrences and delays to defeat the gift. Such occurrences and delays would then replace the settlor's manifest intent to give to certain named beneficiaries. We find such an interpretation would be completely contrary not only to settlor's intentions, but also contrary to the very purpose for which the trust instrument was prepared in the first place.

Further, looking only at the terms of the trust, without using rules of construction, the settlor stated that the distribution date would be as provided "herein," that is, the date when the provisions of the previous paragraphs had been complied with—not when the residue was actually distributed. Again, all previous paragraphs had been complied with, with the exception of payment of the additional tax, for which the payment fund was set aside. It therefore follows and we find Miss Sivia's interest in the trust vested before her death. Although the trial court held the distribution date to be the date of settlor's death, the judgment should be affirmed since the result is the same. Both the date of the settlor's death and the date the residue was first payable occurred prior to Miss Sivia's death. The judgment is therefore affirmed.

BRIGHTMIRE, P. J., concurs.