1998 OK 21

**Mary Ellen HULETT, as Guardian of the Person and Estate of Jason Kyle Hulett, a Minor, Appellant,**

v.

**FIRST NATIONAL BANK AND TRUST COMPANY IN CLINTON, a corporation, as trustee of Dorothy Louis Engers testamentary trust; Laura Jo Jones, formerly Laura Jo Engers, Appellees,**

and

**Egon Engers II, also known as Mark Egon Engers, Jr., and as Mark Egon Engers, Defendant.**

No. 87868.

Supreme Court of Oklahoma.

March 17, 1998.

Rehearing Denied April 21, 1998.

James R. Wright, Jr., Clinton, for Appellant.

Jill C. Weedon of Cornell & Tisdal, Clinton, for Appellee, First National Bank and Trust Company in Clinton.

Ellis Cabaniss and C.B. Graft of Graft & Cabaniss, Clinton, for Appellee, Laura Jo Jones.

LAVENDER, Justice.

¶1 Egon Engers II murdered his mother, Dorothy Engers. Dorothy died testate and her Last Will and Testament, left specified personalty to her two children, Egon and a daughter, appellee, Laura Jo Jones (formerly Engers), and the estate residue to a testamentary trust. In that Egon murdered his mother he is disqualified from taking any interest in her estate by Oklahoma's slayer statute, 84 O.S.Supp.1994, § 231.[1] This appeal is brought, as was the trial court proceeding, on Jason Kyle Hulett's behalf—alleged minor son of Egon and grandson of Dorothy—by appellant, Mary Ellen Hulett, his mother and guardian, who collaterally seek to vacate or modify the final decree entered in the probate of Dorothy's estate, which awarded the personalty bequeathed to Egon and his conditional trust share to Laura.

¶2 Rejecting the collateral attack, the trial court granted summary judgment to Laura. We reverse and remand for further proceedings. If Jason is, in fact, Egon's child and, thus, Dorothy's grandchild, he is entitled to share in Dorothy's estate as an heir under her will and the probate decree is subject to his collateral attack because he received no notice of, or representation in, the probate case.[2]

## PART I.  STANDARD OF REVIEW.

¶3 The appellate standard of review governing a grant of summary judgment is *de novo*. In such regard, we said in *Carmichael v. Beller*, 1996 OK 48, 914 P.2d 1051:

Although a trial court in making a decision on whether summary judgment is appropriate considers factual matters, the ultimate decision turns on purely legal determinations, i.e. whether one party is entitled to judgment as a matter of law because there are no material disputed factual questions. Therefore, as the decision involves purely legal determinations, the appellate standard of review of a trial court's grant of summary judgment is *de novo*. [This Court], like the trial court, will examine the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact. Further, all inferences and conclusions to be drawn from the evidentiary materials must be viewed in the light most favorable to the non-moving party. (citations omitted)

*Id.* at 1053. Also, if the materials subject to consideration on a motion for summary judgment either disclose controverted material facts, or, reasonable minds might reach different conclusions even if the material facts are undisputed, a motion for summary judgment should be denied. *Perry v. Green*, 1970 OK 70, 468 P.2d 483, 488–489. With these standards in mind we turn to a review of the matter.

## PART II.  FACTS AND PROCEDURAL BACKGROUND.

¶4 Dorothy died in March 1987. In November 1987 Egon was sentenced in the District Court of Custer County to life imprisonment after his conviction for the first degree murder of his mother. By virtue of Oklahoma's slayer statute, Egon became disqualified from taking any part of Dorothy's estate. Section 231 provides in relevant part:

No person who is convicted of murder in the first degree, murder in the second degree, or manslaughter in the first degree, as defined by the laws of this state, or the laws of any other state or foreign country, of having taken, caused, or procured another to take, the life of an individual, shall inherit from the victim, or receive any interest in the estate of the victim, or take by devise or legacy, or as a designated beneficiary of an account or

---

1. We use the current, i.e. the 1994 version of § 231. Although the events giving rise to this matter arose prior to the 1994 version, none of the 1994 amendments substantively altered the provision as it pertains to this case. *See* 1994 Okla.Sess.Laws, Ch. 313, § 9.

2. In view of our disposition of this matter which reverses the trial court judgment in favor of appellee and remands for further proceedings, it is unnecessary for us to consider appellant's argument that denying Jason a share in Dorothy's estate somehow worked a corruption of blood or forfeiture of estate, as prohibited by Okla. Const. art. 2, § 15.

security which is a POD or TOD designation, or as a surviving joint tenant, or by descent or distribution, from the victim, any portion of the victim's estate; and no beneficiary of any policy of insurance or certificate of membership issued by any benevolent association or organization, payable upon the death ... of any person, who in like manner takes, causes, or procures to be taken, the life upon which such policy or certificate is issued ... shall take the proceeds of such policy or certificate; but in every instance mentioned in this section all benefits that would accrue to any such person upon the death ... of the person whose life is thus taken ... shall become subject to distribution among the other heirs of such deceased person according to the laws of descent and distribution....[3]

¶ 5 Dorothy died testate, her will being executed in 1984. Aside from certain specified personalty bequeathed to Laura or Egon, the remainder of her estate was devised and bequeathed under the will's residuary clause to appellee, the First National Bank and Trust Company in Clinton, as trustee of the Dorothy Louise Engers' testamentary trust. The trust's terms are in the will. The pertinent parts of the will's dispositive clauses are as follows:

SECOND: I hereby give and bequeath to my daughter, Laura Jo Engers, my sterling silver set and all jewelry which I own at the time of my death.

THIRD: I hereby give and bequeath to my son, Egon Engers, II, my JFK coin set and any other coin collection or coin sets that I own at the time of my death.

FOURTH: All the rest, residue and remainder of my property; real, personal and mixed, of every kind and nature, vested or contingent, and wheresoever situate, of which I may die seized or possessed, I hereby give, devise and bequeath to the First National Bank and Trust Company

in Clinton, Oklahoma, as Trustee under the terms and conditions of the Trust hereinafter defined.

\* \* \*

The income and principal of the trust estate herein created shall be administered and distributed as follows:

A. It is my specific intent that this Trust shall continue until my daughter, Laura Jo Engers, attains the age of thirty-five (35) years. During the term of this Trust, I hereby direct the Trustee to accumulate all income of the Trust Estate which shall be accumulated and added to the principal of this Trust. Upon Laura Jo Engers attaining the age of 35 years, I hereby direct the Trustee to distribute the rest, residue and remainder of said Trust Estate, including any accumulated income, to my children, Laura Jo Engers and Egon Engers, II, in equal shares, share and share alike, but if any of said children die prior to distribution of this Trust Estate, leaving issue who survive, such issue shall take the share of their deceased parent by representation.

¶ 6 Dorothy's will was admitted to probate and a final probate decree was entered in the District Court of Custer County, Case No. P–87–38 in March 1989. Jason was a little over two years old at such time, having been born in December 1986. The record in Case No. P–87–38 facially shows that no notice of the probate case was given to Jason or anyone representing him, nor did he or a representative participate in it. Thus, without any participation from Jason or his representative, the final probate decree determined: Dorothy's sole heirs-at-law were Laura and Egon; Egon was disqualified under § 231 from taking any share of Dorothy's estate because he murdered her; Laura was entitled to the personalty bequeathed to Egon; approximately $105,000.00 should be transferred to trustee bank to serve per the trust's terms; and, essentially, any trust

---

**3.** The portions of § 231 left out of our text quotation pertain to causing the disability of another person, or provide that an insurance company shall be discharged of liability under a policy issued by it when it pays the proceeds in accordance with the policy's terms, unless before payment the insurer has written notice by or on behalf of some claimant other than the beneficiary named in the policy that a claim to the policy's proceeds will be made by heirs of the decedent under the provisions of § 231. Neither of these matters are applicable to our treatment of this appeal.

share Egon might have been entitled to, "shall be set over to Laura [ ]". We note that the heirs-at-law of a decedent are limited to those persons who are determined under the law of intestate succession. All other persons, although relatives, are not considered heirs-at-law. R. ROBERT HUFF, OKLAHOMA PROBATE LAW AND PRACTICE 21 (3d ed. 1995).

¶ 7 Six and one-half years after the final decree—in October 1995—Jason, by his guardian, filed an action in the District Court of Custer County seeking to vacate or modify the decree. Laura, trustee bank and Egon were named defendants. Jason claimed he was the natural out-of-wedlock son of Egon and Mary Ellen and, therefore, entitled to the coin set(s) bequeathed to Egon and to one-half of the residue of Dorothy's estate, which he asserted by virtue of the trust's terms should be held for him by the trustee bank until March 1999, the month Laura will turn 35 years old. Laura was born in March 1964 and Egon in September 1961.

¶ 8 Laura filed a motion for summary judgment, essentially arguing pursuant to § 231 (slayer statute) and 84 O.S.Supp.1994, § 213 (our descent and distribution statute) [4], she was properly awarded any share of Dorothy's estate that would have gone to Egon because she is Dorothy's only other heir-at-law. She asserts Jason is not an heir-at-law because, although Egon is disqualified from taking because of the slayer statute, he is still alive, and under § 213(B)(2)(a) a grandchild is only considered his grandparent's heir-at-law, when the grandchild's parent is deceased.

¶ 9 Jason opposed Laura's motion and also sought summary judgment, claiming his collateral attack on the final probate decree was meritorious. His basic argument on why he is entitled to take a share of Dorothy's estate is that he is entitled to take under the will, not as an heir-at-law, and that § 231 was not intended to mandate a murderer's share of his victim's estate go to decedent's other heirs-at-law in the situation where such a distribution is contrary to the victim's intent, as expressed in a will. He asserts Dorothy's will expresses such a contrary intent allowing him to take if Egon could not.

¶ 10 Attached to Jason's summary judgment material was an Acknowledgment of Paternity purportedly signed by Egon in April 1995, wherein Egon acknowledged he was Jason's natural father.[5] A copy of Jason's birth certificate, which showed Mary Ellen as his mother, but contained a blank space where the identity of the father would normally appear, was also submitted. The record in Case No. P–87–38—the earlier probate case—was also incorporated.

¶ 11 The trial court rejected Jason's collateral attack and granted summary judgment to Laura. The Court of Civil Appeals reversed and remanded for further proceedings. We previously granted certiorari.

## PART III. ANALYSIS AND DISCUSSION.

■ ¶ 12 Initially, we note that on this record it is undisputed Jason received no notice of, or representation in, the probate case of Dorothy's estate (District Court of Custer County, Case No. P–87–38). Thus, if he is an heir entitled to share in her estate, the final probate decree would be subject to collateral attack by him and would not be binding on a minor heir in his position. *See e.g. Oberlander v. Eddington,* 1964 OK 98, 391 P.2d 889, 891 *Fourth Syllabus; Matter of Thurber's Estate,* 1979 OK CIV APP 68, 604 P.2d 873, 874.

■ ¶ 13 Prior to passage of § 231 this Court ruled a murderer was entitled to inherit from his victim. *Holloway v. McCormick,* 41 Okla. 1, 136 P. 1111 (1913).[6] In

---

4. We cite to the most recent version of § 213 even though it was not the version in effect at the time of Dorothy's death. The provision in effect at her death was 84 O.S.Supp.1984, § 213. The amendment in 1994 solely concerned disposition of an intestate's estate where there is a surviving spouse [See 1994 Okla.Sess.Laws, Ch. 8, § 1], a situation not applicable here.

5. Such an acknowledgment is a method by which an out-of-wedlock child may show that he/she is entitled to inherit from his father and his father's kindred, when the acknowledgment is signed in the presence of a competent witness. 84 O.S.1991, § 215.

6. *Holloway* held, because the power to declare the rule of descent was vested in the Legislature, which had in plain, peremptory language provid-

1915, probably in response to *Holloway*, the Legislature passed the predecessor to § 231, which barred or disqualified a slayer from taking any part of his victim's estate whether by will or intestate succession. 1915 Okla. Sess.Laws, Ch. 136, § 1. The dispute here does not concern whether Egon is disqualified from taking any part of Dorothy's estate—all agree he is so disqualified—but who should take the share of her estate that Egon would have been entitled to had he not murdered his mother.

¶14 Laura relies on certain language of § 231 to assert Egon's share is subject to disposition as intestate property and that under § 213(B)(2)(a), a subsection of our descent and distribution statute, she was properly awarded the share because she is Dorothy's only other heir-at-law.[7] Laura argues she is the only remaining heir-at-law of Dorothy entitled to take and that Jason is not an heir-at-law because it is only when a child predeceases his parent that a grandchild becomes an heir-at-law of the grandparent. Thus, Laura's argument is that, although Egon is disqualified from taking, because he is still alive Jason cannot be considered Dorothy's intestate heir under § 213(B)(2)(a). Jason counters by arguing our intestate succession laws are irrelevant to this particular situation and § 231 does not mandate an intestate disposition, but Dorothy's intent as expressed in her will should prevail—an intent Jason asserts shows Egon's issue should take if he could not so take.

¶15 Laura's position is based on the following clause of § 231:

[I]n every instance mentioned in this section all benefits that would accrue to any

such person upon the death ... of the person whose life is thus taken ... shall become subject to distribution among the other heirs of such deceased person according to the laws of descent and distribution....

Laura misconstrues the import of § 231. Neither Egon's conditional testamentary trust share or the personal property specifically bequeathed to him by Dorothy's will were required to be disposed of as intestate property. We deal with the testamentary trust share first.

¶16 Of course, the fundamental rule of statutory construction is to ascertain and give effect to legislative intent. *Ledbetter v. Oklahoma Alcoholic Beverage Laws Enforcement Commission*, 1988 OK 117, 764 P.2d 172, 179. As we read the dispositional clause of § 231 quoted above, it provides only that **any benefit that would accrue to the slayer upon the death of his victim** shall be distributed to the other heirs of the victim by the laws of descent and distribution. It does not apply where nothing would accrue to the slayer at the death of his victim, a situation unmistakably evident here in regard to the testamentary trust.

▪ ¶17 By the plain, unambiguous terms of the trust Egon was not entitled to any trust share upon Dorothy's death. A trust's terms may postpone vesting of a beneficiary's interest to the happening of some future event, including the contingency or condition the beneficiary must survive to a designated future distribution date. *Sivia v. Snyder*, 1973 OK CIV APP 8, 517 P.2d 812 (approved for publication by Oklahoma Su-

---

ed that a husband shall inherit from his deceased wife, with no exception being made when the husband murders his wife, this Court would not be justified in reading into the descent and distribution statute a clause disinheriting the husband upon the murder of his wife, notwithstanding this Court's horror and repulsion at allowing a murderer to so inherit from his victim.

7. Subsection 213(B)(2)(a) would be the provision applicable **if** Egon's share was required to be disposed of as **intestate** property because Dorothy died with no surviving spouse, but with surviving children. Such provision provides:

B. Beginning July 1, 1985, if any person having title to any estate not otherwise limited

by any antenuptial marriage contract dies without disposing of the estate by will, such estate descends and shall be distributed in the following manner:

\* \* \*

2. The share of the estate not passing to the surviving spouse or if there is no surviving spouse, the estate is to be distributed as follows:

a. in undivided equal shares to the surviving children of the decedent and issue of any deceased child of the decedent by right of representation....

Issue is defined in 84 O.S.Supp.1994, § 213(B)(4) as lineal descendants.

preme Court). When a trust's terms show the intention of the trustor is to so postpone vesting, the beneficiary obtains no vested interest in the trust unless the contingency occurs and vesting is said to rest on a condition precedent. *See Atchison v. Dietrich*, 1957 OK 186, 315 P.2d 265. Under the testamentary trust set up by Dorothy's will, Egon would have obtained no vested interest in the trust upon Dorothy's death because even at her death, his interest was merely a contingent one.

¶ 18 By virtue of the residuary clause of Dorothy's will she bequeathed and devised all her remaining property to trustee First National Bank and Trust Company in Clinton, to serve per the terms of the testamentary trust. The trust's plain terms provide that no benefits—either principal or income—accrued to Egon upon her death. Instead, as to Egon, vesting is contingent on his survival to the trust's designated distribution date, which all parties appear to agree is not to occur until March 1999, i.e. when Laura turns 35 years old. Thus, no part of the testamentary trust accrued to Egon upon Dorothy's death and, in fact, neither principle or income from it would inure to his benefit until a period of approximately twelve (12) years after he murdered his mother.[8]

¶ 19 Accordingly, contrary to Laura's argument, § 231 does not control who should take Egon's conditional trust share because no part of it accrued to him upon Dorothy's death. Simply, § 231 provides no specific legislative guidance as to whether Jason or Laura should take Egon's conditional trust share and we, therefore, must decide its disposition outside the confines of that legislative provision.

¶ 20 The Kansas Supreme Court faced a similar dilemma in *Estate of Van Der Veen*, 262 Kan. 211, 935 P.2d 1042 (1997). There, the parents of two children (a son and daughter), were murdered by the son, who himself had a child. The parents were never aware of the existence of the son's child, their grandchild. In a joint will, the parents provided their estate residue was to go to the son and daughter, "equally and per stirpes." *Id.* at 1043. The Kansas slayer statute [K.S.A.1996 Supp., § 59–513], although disqualifying the son from taking any part of his parents' estate either by will or intestate succession, was silent as to the disposition of the slayer's share. The Kansas Supreme Court, recognizing the per stirpes language meant the testators had taken into account the possibility one or both of their children would predecease them and, in such case, the grandchild would take the son's estate share, had to decide whether the grandchild could be allowed to take under the will even though his slayer father was not actually deceased.

¶ 21 The Kansas Supreme Court concluded that where the grandchild was wholly innocent the better rule was to dispose of the disqualified slayer's share as if the slayer had predeceased his victim(s), which would allow the grandchild to take. 935 P.2d at 1049. It was also concluded such a determination was consistent with the intent of the parents as expressed in the will, which reflected the daughter was to take only one-half of the estate and no intention she was to receive the entirety of the estate in the event of the son's disqualification. *Id.* Likewise, we believe the better rule here is to dispose of Egon's potential trust share as if he predeceased Dorothy—or as more apt to the particular trust terms—that Egon be deemed to have died prior to the distribution date designated in the will/testamentary trust.

¶ 22 In construing a will the intent of the testator is paramount. *Matter of Estate of Worsham*, 1993 OK CIV APP 122, 859 P.2d 1134, 1136. It is also presumed a testator intends to dispose of his entire estate and avoid intestacy in whole or in part. *Matter of Estate of Tayrien*, 1980 OK 8, 609 P.2d 752, 755. Here, Dorothy plainly expressed an intent that her entire estate be disposed of under her will and that Laura was to receive only a one-half share of the testamen-

---

8. As we read the trust, vesting in Egon could also occur if Laura were to die before her 35th birthday, in which event the distribution date is moved forward to Egon's turning 35 years old. As we set out in **Part II, Facts and Procedural Background**, Egon was born in September 1961 and is, thus, already 35 years old. This contingency has, of course, not occurred because Laura is still alive.

tary trust. Nothing in the will's provisions expresses an intent that Laura is to receive the entirety of the trust in the event Egon, having a child, was disqualified from taking. On the contrary, the terms of the will specifically contemplated providing for her grandchildren out of the trust and express a preference that Egon's issue, not Laura, should take where Egon dies prior to the distribution date, a situation we deem analogous to his disqualification under § 231. This leaves only the personalty specifically bequeathed to Egon for our consideration.

■ ¶ 23  Laura's position in this case is essentially one which seeks to apply what she contends is the plain language of the dispositional clause of § 231 to mandate a slayer's share of his victim's estate passes by intestate succession to a victim's other heirs-at-law. In essence, she seeks to read § 231 in isolation, divorced from any other potentially relevant statute or any principle concerning the interpretation of wills. We do not believe § 231 can be read in such isolation and Laura's position fails to take into consideration that when construing statutes, all relevant portions of the statute and related enactments must be considered together, where possible, so that force and effect is given to each. *Clifton v. Clifton*, 1990 OK 88, 801 P.2d 693, 696.

¶ 24  Under 84 O.S.1991, § 167, "[a] bequest of the residue of the testator's personal property passes all the personal property which [s]he was entitled to bequeath at the time of [her] death not otherwise effectually bequeathed by [her] will." Further, as noted above, there is a well-recognized presumption against intestacy (of which § 167 is, itself, a part) and under this presumption a will's residuary clause must be construed to prevent intestacy as to any part of the testator's estate unless there is an apparent intention the property should be excluded from the will. *In Re Estate of He–Ah–To–Me*, 1958 OK 46, 325 P.2d 746, 750. Thus, it has

been recognized a general residuary clause passes not only all the property the testator did not attempt to dispose of in other parts of her will, but also all the property attempted to be disposed of by the will outside of the residuary clause, the disposition of which has for some reason failed, unless a contrary intention appears in the will. 4 Bowe–Parker: PAGE ON WILLS § 33.54 (1961).

¶ 25  Here there is no hint of an intention expressed in Dorothy's will to exclude the personalty bequeathed to Egon from the reach of her will's residuary clause upon his disqualification. Therefore, application of § 167 and the presumption in favor of testacy would result in the personalty Egon is disqualified from taking becoming part of the residue of the estate to serve per the terms of the testamentary trust because such personalty was not subject to an effective disposition. It is, thus, clear to us the dispositional language of § 231 was never intended to apply to a situation like that here where § 167 and the presumption in favor of testacy allows the personalty specifically bequeathed to Egon to pass by virtue of the general residuary clause of Dorothy's will. To rule otherwise would ascribe to the Legislature an intent to defeat the ability of a testator to completely dispose of their property by will, without any direct expression in § 231 that the statute was to have such an effect. We decline to attribute such a legislative intent to § 231.[9]

■ ¶ 26  In view of our analysis, it is plain the trial court erred in granting summary judgment to Laura. Summary judgment to Jason, however, would also not be warranted on the present record. His summary judgment submission relied on the Acknowledgment of Paternity purportedly signed by Egon in the presence of a competent witness to support his claim he was Egon's natural child. Although under 84 O.S.1991, § 215 such an acknowledgment is a method by which an out-of-wedlock child may

9. In that Jason disclaims reliance on our anti-lapse statute [84 O.S.1991, § 142] to support his position in this case (See page 8 of his February 27, 1996 trial court brief), we have no occasion to delineate its application or non-application on disposition of the personalty specifically bequeathed to Egon under Dorothy's will. Section 142 provides that, "[w]hen any estate is devised or bequeathed to any child or other relation of the testator, and the devisee or legatee dies before the testator, leaving lineal descendants, such descendants take the estate so given by the will, in the same manner as the devisee or legatee would have done had he survived the testator."

show he/she is entitled to inherit from his father and his father's kindred, no evidence was submitted this acknowledgment was actually signed by Egon in the presence of a competent witness. Jason merely alleged, in his February 27, 1996 trial court brief in response to Laura's motion for summary judgment and in support of his own motion for summary judgment, that Egon signed the acknowledgment in the presence of a competent witness. In the absence of proof such an acknowledgment was actually signed by Egon in the presence of a competent witness, the writing cannot currently be taken as sufficient to comply with the requirement(s) of § 215. *See In Re Lewis' Estate,* 200 Okla. 352, 194 P.2d 174, 176 (1948); *Burns v. Lawson,* 188 Okla. 181, 107 P.2d 555, 556 (1940). Therefore, Jason's paternity remains a material disputed factual issue and the matter must be remanded for further proceedings.[10]

¶ 27 For the reasons specified above, the Court of Civil Appeals' memorandum opinion is **VACATED,** the trial court judgment is **REVERSED** and the matter is **REMANDED TO THE TRIAL COURT FOR FURTHER PROCEEDINGS.**

¶ 28 KAUGER, C.J., SUMMERS, V.C.J., HODGES, HARGRAVE and ALMA WILSON, JJ., concur.

¶ 29 SIMMS and OPALA, JJ., concur in part; dissent in part.

¶ 30 WATT, J., dissent.

SIMMS, Justice, concurring in part, dissenting in part:

¶ 1 I would affirm the trial court's judgment in favor of Laura in all respects.

¶ 2 I am authorized to state that Justice Watt Dissents and Joins in the view expressed herein.

10. We finally note that we decline in this appeal to delve into trustee bank's request—made to the trial court—for a determination of who should be included in the "class" of Egon's issue. The request was made by trustee bank because the possibility exists Egon may produce other children before the trust's designated distribution date.