2001 OK 57

**Brian Dale DUBUC, Plaintiff–Appellant,**

v.

**Marty SIRMONS, John Richards, Wayne Morton, John Latimer, and Cathy Morton, Defendants–Appellees.**

No. 93,793.

Supreme Court of Oklahoma.

July 3, 2001.

Brian Dale Dubuc, Holdenville, OK, *Pro Se.*

Tracy Folsom Milner, Assistant Attorney General, Oklahoma City, OK, for Appellees.

OPALA, J.

¶ 1 Certiorari stands limited to whether the Court of Civil Appeals erred in affirming summary judgment for the defendants (on a dispositive theory that was interjected *sua sponte* ). We answer in the affirmative and remand the cause to the Court of Civil Appeals for its reconsideration of the appeal.

## I

### THE ANATOMY OF LITIGATION

¶ 2 On 4 May 1999 Brian Dale Dubuc [Dubuc, inmate or prisoner], an incarcerated inmate at Howard McLoud Correctional Center [HMCC], brought a *civil rights action* against five HMCC employees—Marty Sirmons, John Richards, Wayne Morton, John Latimer and Cathy Morton—individually and in their official capacities [collectively called Sirmons, prison officials or defendants]. His claim rests on the prison officials' actions which allegedly deprived him of meaningful *access to court* in his attempt to prosecute an appeal from the denial of postconviction relief in a Tulsa County case.[1] *The Court of Criminal Appeals dismissed that appeal as untimely.*

¶ 3 Both parties moved for summary judgment.[2] The trial court gave summary relief to Sirmons and overruled Dubuc's quest. The Court of Civil Appeals [COCA] affirmed. We granted certiorari on the inmate's petition.

1. Dubuc's quest for postconviction relief was brought in Cause No. CF–91–3581, styled State of Oklahoma v. Brian Dale Dubuc on the docket of the District Court, Tulsa County.

2. Sirmons sought, in the alternative, either the claim's dismissal or summary judgment.

### Prisoner's Claim For Postconviction Relief—The Antecedent Litigation

¶ 4 Dubuc's unsuccessful attempt to launch an appeal from the denial of his quest for postconviction relief forms the basis of his civil rights action. While he was incarcerated at the Jess Dunn Correctional Center [JDCC], Dubuc sought postconviction relief from the District Court, Tulsa County. According to Dubuc, his quest was denied by order *entered* and *mailed 23 February 1999,* making the *30–day* **deadline** *for appealing fall on 25 March 1999.*[3] Dubuc asserts that on **Friday, 19 March 1999,** he had the appellate paperwork ready for transmission to the Court of Criminal Appeals, but the JDCC officials refused to process it because he was being transferred that day to the Howard McLeod Correctional Center [HMCC].

¶ 5 Upon his March 19th arrival at HMCC, Dubuc states, he advised Lt. Wayne Morton of the statutory filing deadline and requested admittance to the law library. He was denied access until the next day, Saturday, March 20. This delay prevented him from mailing his appellate paperwork until the following Monday. Dubuc spent time in the library on Saturday to finalize all the needed documents *except for the in forma pauperis affidavit.* The latter had to be notarized and his account verified by prison officials. According to Dubuc, on Monday, March 22, he told two HMCC officials about his **March 25** filing deadline. They had his *in forma pauperis affidavit* notarized that day but could not complete the form because the critical money account information had to be obtained from JDCC, the site of his former confinement.[4] Dubuc states that after he kept "badgering" the HMCC staff about whether they had received the completed form, Latimer told him "not to bother the staff or the Warden with this problem" and that the paperwork would be done "when 'they' got to it." Latimer threatened him

3. 22 O.S.1991 § 1087; Rule 5.2(C)(2), Rules of the Oklahoma Court of Criminal Appeals, 22 O.S.Supp.1998, Ch. 18, App., *infra* note 12.

4. The needed documentation, located in the inmate's trust accounting system, was required to prove the affiant's financial status.

with misconduct, Dubuc claims, if he said anything else about the matter.

¶ 6 In an effort to save his appeal Dubuc delivered to prison officials for mailing to the Court of Criminal Appeals his *petition in error,* *brief,* and *certified trial court order* (*sans* the pauper's affidavit) on Tuesday, March 23. The affidavit was not included because the HMCC officials allegedly prevented him from timely obtaining the information critical for its completion. On Wednesday, March 24, Dubuc asserts, an HMCC employee checked on the status of the affidavit. He had the business office fax the information and complete the form. Dubuc claims that when Latimer received the affidavit on March 24, he withheld the form and did not give it back to him *until the next day.* Dubuc states that on Thursday, March 25th he told Cathy Morton about his filing deadline and asked her to fax the documents to the Court of Criminal Appeals that day. His request was denied after she consulted with the assistant warden, John Richards. Later that day Dubuc gave the *in forma pauperis* affidavit to prison officials for mailing to the Court of Criminal Appeals. All of Dubuc's appellate paperwork, which had been mailed to the Court of Criminal Appeals (on March 23 and March 25), was filed by that court's clerk *26 March 1999.*

¶ 7 The Court of Criminal Appeals *dismissed the appeal as untimely.* The text of its order *notes that postconviction relief was denied by the trial court on* **February 18** *and that a copy of the order was* **mailed to** *Dubuc on* **February 23.** **The critical trial court order is not among the documents found in the assembled record.**

### Sirmons' Argument For Summary Adjudication.

¶ 8 According to Sirmons' motion for summary judgment, defendant-Latimer *did not*

(a) *hold up* any paperwork for Dubuc, (b) *deprive* Dubuc of any service or (c) *warn* him not to talk to the warden or any staff member. Sirmons claims that Dubuc failed to comply with Department of Corrections [DOC] policy, which requires that an inmate furnish the facility staff with *written proof* of a filing deadline by 10:00 a.m. on the deadline date. To defeat Dubuc's claim Sirmons interposed four affirmative defenses: (1) Dubuc failed to exhaust the administrative remedies mandated by the Prison Litigation Reform Act;[5] (2) Dubuc has not shown that he has been denied the right of access to the courts;[6] (3) the defendants possess qualified immunity;[7] and (4) they are protected by Eleventh Amendment immunity.[8]

### Dubuc's Counter–Motion for Summary Relief

¶ 9 Dubuc countered that the HMCC officials were put on notice of the filing deadline on March 19 (the day of his arrival at that facility) when defendant Copeland reviewed the order denying postconviction relief and approved the photocopies and mailing forms, rather than making him wait 48 hours as provided by DOC rules. According to Dubuc, invoking the administrative grievance procedure would have been futile because that process could not secure for him a reinstatement of his dismissed appeal. Dubuc asserts he should be given summary judgment on his claim because HMCC correctional officers failed in their constitutionally imposed duty to assist him in accessing the court to prevent the appeal's dismissal.

### The Court of Civil Appeals' Affirmance

¶ 10 The Court of Civil Appeals [COCA] affirmed the trial court's summary judgment

---

**5.** 42 U.S.C. § 1997e(a). This requirement is apparently met by filing a grievance against the DOC employees.

**6.** According to Sirmons' argument, the inmate must prove *actual injury,* which requires a showing that a nonfrivolous claim challenging the inmate's sentence or conditions of confinement has been lost or rejected, or the presentation of the claim is being prevented.

**7.** To overcome this defense, Sirmons argues, Dubuc must do more than allege in the abstract some violation of a constitutional right. He must show that the defendants violated clearly established law.

**8.** According to Sirmons, a prison officer acting in his official capacity is not a "person" within the meaning of 42 U.S.C. § 1983 and hence is immune from suit by operation of the Eleventh Amendment.

for Sirmons *on the sole theory* (interjected *sua sponte* ) that Dubuc's civil rights case rests on the *erroneous conclusion* that the Court of Criminal Appeals' dismissal rested on his failure to file the *in forma pauperis* affidavit within the 30–day time period. COCA noted that, **but for this dispositive point of law,** there were fact issues that would have prevented the entry of summary judgment.[9] COCA *reasoned* that because (a) Dubuc's claim for relief arises from allegations that HMCC personnel caused him to miss his March 25 deadline for filing the pauper's affidavit by inaction or delayed performance (even though he had informed them of the deadline), and (b) the Court of Criminal Appeals' order (which declared itself *sans* jurisdiction *solely* on the ground that the *petition in error* was not timely filed) *does not mention the pauper's affidavit as the reason for dismissal,* the prison officer's handling of that document was simply immaterial. COCA then affirmed the summary judgment to Sirmons, concluding no doubt that Dubuc's appeal would have been dismissed even if he had the affidavit in time.[10]

## II

## THE *DISPOSITIVE* ISSUE ON CERTIORARI

¶ 11 The *dispositive issue* on certiorari is whether the prisoner's appeal would have failed even if the completed pauper's affidavit had been included with the other papers (petition in error, brief and certified trial court order) which were delivered to prison officials on March 23 for mailing to the court clerk of the Court of Criminal Appeals.

¶ 12 The Post–Conviction Procedure Act[11] [Act] governs challenges to a conviction or sentence as well as appeals from the grant or denial of relief. Section 1087 of the Act provides that the critical event which triggers the appeal time is the *filing of the decision* in the office of the trial court's clerk.[12] A party has 30 days from the filing of the order to commence an appeal in the Court of Criminal Appeals by filing the petition in error and brief (and a certified copy of the order) in the office of the clerk of the Court of Criminal Appeals. The delivery of the appellate paperwork to prison officials is not considered effective for the § 1087 filing requirement.[13] At the time of filing,

9. COCA noted that a DOC report, apparently prepared at the trial court's direction, revealed unresolved fact issues, such as whether (a) Dubuc timely notified DOC personnel about his filing deadline, (b) he pursued his administrative remedy by grievance before seeking district court relief and (c) the grievance remedy would have been futile and hence should be excused.

10. This is the meaning we attribute to COCA's conclusory phrase: "Inasmuch as there is no dispute about whether he was able to obtain assistance to prepare and mail his petition in error, brief, and copy of the District Court order then summary judgment was properly granted."

11. 22 O.S.1991 §§ 1080–1089.7.

12. The pertinent terms of 22 O.S.1991 § 1087 are:

A final judgment entered under this act may be appealed to the Court of Criminal Appeals on petition in error filed either by the applicant or the state *within thirty (30) days from the entry of the judgment* . . . .
(emphasis added).

Rule 5.2(C)(2), Rules of the Oklahoma Court of Criminal Appeals, 22 O.S. Supp.1998, Ch. 18, App., advises all parties desiring to appeal from a final judgment entered under the Post–Conviction Procedure Act to file their petition in error "within thirty (30) days from the date the final order of the District Court is filed with the Clerk of the District Court."

13. *Hunnicutt v. State,* 1997 OK CR 77, ¶ 7, 952 P.2d 988, 989; *Moore v. Gibson,* 2001 OK CR 8, ¶ 14, 27 P.3d 483.

Whether the prisoner had timely notice of the order (by which he was aggrieved) does not appear to be critical here, but the date the adverse order was filed is crucial. This is so because the filing of that order alone triggers the appeal time. An inmate who fails timely to appeal, through no fault of his own, may invoke the out-of-time appeal procedures for post-conviction proceedings (Rules 5.2 and 2.1(E), Rules of the Oklahoma Court of Criminal Appeals, 22 O.S.Supp.1998, Ch. 18, App.). *Banks v. State,* 1998 OK CR 5, ¶ 5, 953 P.2d 344, 346 (the Court of Criminal Appeals does not recognize the "mailbox rule" but uses the out-of-time procedures for post-conviction proceedings). *Cf. Woody v. State ex rel. Department of Corrections,*

the appealing party must pay costs [14] or submit an affidavit *in forma pauperis*.[15] The Court of Criminal Appeals deems itself without cognizance of an appeal where the *pro se* prisoner fails timely to comply with the statutory cost requirements.[16] The presence of the pauper's affidavit is a *sine qua non* of the filing's sufficiency.[17]

¶ 13 There is a controversy here between the critical dates *assumed* by the Court of Criminal Appeals in its dismissal order and those dates which the prisoner tenders to us for the *entry and mailing* of the trial court's order that denies postconviction relief. In support of his position that the trial court's order was **entered** and **mailed** on **23 February 1999,** Dubuc tendered below what appears to be an unstamped copy of the Index of Contents of the appellate record. Based on a February 23 filing date, the terminal day for filing the appeal would be March 25. The Court of Criminal Appeals, on the other hand, believed the prisoner's appeal was out of time because, according to its dismissal order, postconviction relief was **denied** in the trial court on **February 18** and a copy of that court's order was **mailed** to Dubuc on **February 23.** Based on the February 18 filing date, the terminal day of the 30–day appeal time would be Saturday, March 20, which period would stand extended to Monday, March 22. It is apparent that the basis of the decision for the appeal's dismissal was

the Court of Criminal Appeals' view that a different set of dates (from those on which the prisoner relies) governed Dubuc's appeal time.

¶ 14 The dispositive issue before us now cannot be answered on this record. This is so because the critical trial court order that denied postconviction relief from which the appeal was brought is absent from the assembled materials in the record. There is *no record proof of when the appeal time was triggered* by the filing of the trial court's adverse order which the prisoner sought to have reviewed. The latter's text and filing date are the sole source that could inform COCA of the correct date on which the 30–day limit began to tick. Because there is no record proof warranting the adoption of Dubuc's date of February 23, we cannot conclude that his appeal would not have failed had the authorities enabled him to include the affidavit with the papers by which he sought to commence the appeal.

¶ 15 The absence of the critical order was not fatal to the prisoner's appeal, but its incorporation is a *sine qua non* of a meaningful appellate review. When the record is incomplete for lack of a *critical part* which may be readily procured, COCA may afford the appellant an opportunity to supplement the record *nunc pro tunc* before the trial court sitting as a special master.[18]

1992 OK 45, ¶¶ 5–6, 833 P.2d 257, 259–60 (the mailbox provisions of 12 O.S.1991 § 990A(B) apply in the Oklahoma Supreme Court to *pro se* prisoners' appeals).

14. The terms of 20 O.S.1991 § 38 provide in pertinent part:

... In all cases filed in the Court of Criminal Appeals, and at the time of filing same, there shall be deposited with said Clerk as costs in said cause, Fifty Dollars ($50.00).... Rule 1.10, Rules of the Oklahoma Court of Criminal Appeals, 22 O.S.1991, Ch. 18, App.

15. Rule 1.11, Rules of the Oklahoma Court of Criminal Appeals, 22 O.S.1991, Ch. 18, App., provides in pertinent part:

Any person who asserts indigency and an inability to pay the filing fees required under these Rules must execute and file with the Clerk of this Court an "Affidavit in Forma Pauperis," verified before a notary public or other person authorized to administer oaths....

16. *Behrens v. Patterson*, 1997 OK CR 76, ¶ 3, 952 P.2d 990, 991; *Hunnicutt, supra* note 13, at ¶ 5, at 989.

17. In *Behrens, supra* note 16, at ¶ 3, at 991, the court held that the filing date for matters before the Court of Criminal Appeals is the date when "the Clerk's office is open for the performance of public business" and the item is actually received by the clerk "before the close of business in proper order and with the necessary number of copies and all necessary filing fees, or a pauper's affidavit for waiver of filing fees."

18. *Huff v. Huff*, 1984 OK 51, ¶ 5, 687 P.2d 130, 132. We note that Dubuc attempted to supplement the appellate record by attachment of some paper to his petition for rehearing in the Court of Civil Appeals. Neither this court nor COCA may consider as part of an appellate record any instrument or material which has not been incorporated into the assembled record by a certificate of the clerk of the trial court. *Frey v. Independence Fire and Cas. Co.*, 1985 OK 25, ¶ 7,

## III

### SUMMARY

¶ 16 We therefore hold that on this record the reason given for COCA's affirmance of summary judgment does not support its disposition. Because COCA *erroneously* concluded that, as a matter of law, the *in forma pauperis affidavit was immaterial to the dismissal of Dubuc's appeal in the antecedent litigation,* we return this cause to that court for *another review.* On remand COCA (a) *should afford* Dubuc the opportunity to institute an authorized trial court *nunc pro tunc* correction proceeding[19] and (b) when that is completed and the record supplemented, *should then determine* the dispositive issue on Dubuc's appeal whether the appeal would have failed as untimely to review the filed trial court order even if Dubuc had included his *in forma pauperis* affidavit with the rest of the papers that were delivered to prison officials on March 23 for filing with the clerk of the Court of Criminal Appeals.

¶ 17 On certiorari granted upon the inmate's petition, the Court of Civil Appeals' opinion is vacated and the cause remanded to that court for its reconsideration of the appeal in a review to be consistent with this pronouncement.

¶ 18 WATT, V.C.J., LAVENDER, OPALA, KAUGER and BOUDREAU, JJ., concur.

¶ 19 HARGRAVE, C.J., HODGES, SUMMERS and WINCHESTER, JJ., dissent.

698 P.2d 17, 20; *Eckel v. Adair,* 1984 OK 86, ¶ 9, 698 P.2d 921, 925.

**19.** *Huff, supra* note 18, at ¶ 5, at 132.