2004 OK CIV APP 23

**Brian Dale DUBUC, Plaintiff/Appellant,**

v.

**Marty SIRMONS, John Richards, Wayne Morton, John Latimer, and Cathy Morton, Defendants/Appellees.**

No. 93,793.

Court of Civil Appeals of Oklahoma, Division No. 2.

Oct. 21, 2003.

Rehearing Denied Dec. 22, 2003.

Certiorari Denied Feb. 18, 2003.

Brian Dale Dubuc, Davis Correctional Facility, Holdenville, OK, Plaintiff/Appellant, Pro Se.

Honorable Drew Edmondson, Attorney General, Tracy Folsom Milner, Assistant Attorney General, Oklahoma City, OK, for Defendants/Appellees.

Opinion on Remand by KEITH RAPP, Presiding Judge.

¶ 1 The trial court plaintiff, Brian Dale Dubuc ("Dubuc"), appeals the order of dismissal and summary judgment entered by the trial court in favor of the trial court defendants, Marty Sirmons, John Richards, Wayne Morton, John Latimer, and Cathy Morton (collectively "Sirmonses").

¶ 2 This matter is before this Court on remand from the Oklahoma Supreme Court after its decision in *Dubuc v. Sirmons*, 2001 OK 57, —— P.3d ——, 2001 WL 744467 (pending release). Pursuant to that decision, this Court directed that the trial court, acting as special master, institute a *nunc pro tunc* hearing for the purpose of supplementing the record on appeal to include the Order Denying Post Conviction Relief entered in the District Court of Tulsa County, Oklahoma, cause number CF 91 3581, styled *State of Oklahoma v. Brian Dale Dubuc* (Tulsa Case). Dubuc requested and was granted a further opportunity to supplement the appellate record.

¶ 3 The trial court has certified the supplemental material to this Court. Dubuc was directed to advise this Court that the proceedings were completed and he has done so by Notice filed herein on February 19, 2002.

¶ 4 Therefore, this Court finds and orders that the *nunc pro tunc* hearings are completed and that the record has been supplemented in accord with the decision of the Supreme Court.

## BACKGROUND

¶ 5 Dubuc, an inmate in custody of the Oklahoma Department of Corrections (DOC), appealed the trial court's order of dismissal and summary judgment entered in favor of the trial court defendants, all of whom are DOC officials or employees. He claims monetary and other relief from the defendants on the ground that he was denied access to the Appellate Courts. He asserted the defendants deprived him of meaningful access to the Appellate Courts in his attempt to appeal the denial of the post conviction relief in the Tulsa Case.

¶ 6 The Tulsa Case appeal was denied by the Oklahoma Court of Criminal Appeals as untimely. Dubuc had been convicted in Tulsa County. He filed an application for post-conviction relief on January 7, 1999. The application was denied. However, while the filing date and the date of mailing of the order was shown as February 23, 1999, the date the order denying relief was mailed to Dubuc could not be ascertained from the appellate record. This is because the Tulsa Case order was not part of the transmitted appellate record, even though the dismissal order from the Court of Criminal Appeals recited dates and that order was part of the record.

¶ 7 The Supreme Court determined that the absence of this February 23, 1999 order from the appellate record was critical to a review of the appeal. *Dubuc*, 2001 OK 57 at ¶¶ 11–16, —— P.3d —— (pending release). The Tulsa Case order is now a part of the record.

¶ 8 The Tulsa Case order was signed by the District Judge in that case on February 18, 1999. It bears a filing date stamp showing a filing date of February 23, 1999. A certified copy of the order was mailed to Dubuc on February 23, 1999, as shown by the certificate of mailing executed by the Tulsa County Court Clerk to Dubuc at the Jess Dunn Correctional Center (JDC) at Taft, Oklahoma. According to Dubuc's verified petition, as supplemented by his response to the defendants' motion for summary judgment and his own motion for summary judgment, he was incarcerated at Jess Dunn Correctional Center until March

19, 1999, when he was transferred to DOC's McLeod facility.

¶ 9 Dubuc filed a notice of appeal in the Tulsa Case on March 2, 1999, within the 10–day deadline prescribed by the Oklahoma Court of Criminal Appeals (CCA). Rule 5.2(C)(1), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (1999). On March 8, 1999, the District Court Clerk certified the record and on March 15, 1999, the Clerk gave notice that the record was completed. Dubuc further stated that he was unable to complete the process for his appeal while at JDC because of his transfer to the McLeod facility.

█ ¶ 10 In addition, a person desiring to appeal an order denying post-conviction relief is required to file, within 30 days of the entry of the order, a petition in error, supporting brief, and a certified copy of the order with the Court of Criminal Appeals. 22 O.S.1991, § 1087. According to the CCA's Rule, the deadline is thirty days from the filing of the order. Rule 5.2(C)(2), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (1999). Thus, under the Statute, as amplified by the CCA's Rule, Dubuc's time to file his appeal commenced on February 23, 1999, and the deadline to file his appeal was March 25, 1999, that is thirty days from the filing date of February 23, 1999.[1]

¶ 11 Dubuc stated he mailed his appeal documents on March 23, 1999, from McLeod, but without payment of costs or, in lieu thereof, an affidavit *in forma pauperis*. The Clerk of the CCA filed the documents on March 26, 1999, and assigned a case number to the appeal. The Clerk's receipt report in the record shows that no cash cost deposit was made on March 26, 1999.

█ ¶ 12 A failure to file the required appeal documents within the time prescribed is deemed by the CCA to be a procedural bar to consideration of the appeal.[2] Rule 5.2(C)(5), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (1999). The CCA dismissed Dubuc's appeal as untimely stating in its Order:

On March 26, 1999, Petitioner, pro se, appealed to this Court from an Order of the District Court of Tulsa County denying his application for post conviction relief in Case No. CF–91–3581. On February 18, 1998(sic), Petitioner's application was denied by the District Court of Tulsa County. A review of the order submitted with Petitioner's application indicates that a certified copy of the order was sent to Petitioner on February 23, 1999.[3] It is from this denial that Petitioner appeals.

Rule 5.2(C)(2), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, Ch. 18, App. (1998) requires that an applicant desiring to appeal from the final order of the District Court under Section V of these rules, must first file a petition in error with any brief to be submitted and with a copy of the District Court order attached with the Clerk of this Court within thirty (30) days from the date of the final order of the District Court. Petitioner has failed to timely seek relief in this Court.

Accordingly, we DECLINE jurisdiction of this matter.

¶ 13 Dubuc's lawsuit claims that Sirmonses' actions in failing to assist him with his affidavit caused his appeal to be dismissed. He claims that information pertinent to his account to establish indigency was obtained by prison officials on March 24, 1999, but

---

1. Incorporating the date of mailing the order to Duboc here does not alter the timing as the mailing date and the filing date are identical, February 23, 1999. Moreover, in an analogous situation, the CCA does not recognize the "mailbox rule" for purposes of timely filing of appeals to that Court. *Hunnicutt v. State*, 1997 OK Cr 77, 952 P.2d 988.

2. In matters "criminal in nature" the CCA has exclusive appellate jurisdiction. *Smith v. Oklahoma Dept. of Corrections*, 2001 OK 95, ¶ 1, 37 P.3d 872, 873.

3. The *1998* date is clearly a typographical error. In any event, whether the Court computed the deadline from February 18, *1998*, or February 18, *1999*, or February 23, *1999*, the filing date shown by the Court of Criminal Appeals of March 26, 1999, fell outside the thirty day period. The issue of whether Dubuc was prevented from access to the courts by prison officials would not have been resolved by reference to the Court's order under the Supreme Court's decision remanding the matter to this Court for further review.

that DOC officials prevented him from presenting the *in forma pauperis* affidavit as a part of the remainder of the appeal documents pertaining to the Tulsa Case.

¶ 14 Dubuc, in his motion for summary judgment, admits he knew that the deadline to file his appeal was March 25, 1999. He asserts that the appeal documents, with the exception of the *in forma pauperis* affidavit, were with the CCA two days prior.[4] He further acknowledges that his affidavit was postmarked March 25, 1999, and states that it was received by the Court on March 26, 1999.

¶ 15 Dubuc states that on his arrival at McLeod on Friday, March 19, 1999, he attempted to use the library to process his appeal but was denied permission due to the hour.[5] He further states that he learned that the library would be open on Saturday, March 20, 1999. He processed his appeal papers on that day, except for the affidavit. Prison documents confirm that Dubuc obtained assistance on March 20, 1999.

¶ 16 Dubuc asserts that he returned on Monday, March 22, 1999, to complete his affidavit and the records confirm that he signed it on that day. Dubuc also claims he told prison personnel about his filing deadline.

¶ 17 Dubuc then asserts that, on March 22, 1999, the day he claims he told defendant Latimer about the deadline, Latimer told him not to bother anyone else about the issue and when "they got to it" the paperwork would be done. Dubuc claimed that from this mo-

ment he was subject to discipline if he again spoke about the deadline.

¶ 18 DOC prepared a report apparently in response to the trial court's direction.[6] The salient portions of this report deny that DOC personnel were noticed of the deadline and deny that Dubuc was in any manner denied access to assistance to file his court proceedings. The DOC records reflect that Dubuc mailed documents to the Court of Criminal Appeals beginning March 23, 1999, as he admits. The report contains a copy of DOC's written policy which requires that an inmate notify DOC personnel of court deadlines.

¶ 19 The defendants filed a motion to dismiss and motion for summary judgment. The propositions in support of dismissal range from failure to exhaust administrative remedies to qualified and Eleventh Amendment immunities from suit. The summary judgment argued that Dubuc has failed to show he was denied access to the court by DOC personnel. Dubuc also requested summary judgment.

¶ 20 The trial court sustained the motion to dismiss and granted the defendants' motion for summary judgment. Dubuc's motion was denied. Dubuc appeals.

## QUESTION FOR REVIEW ON REMAND

¶ 21 The Oklahoma Supreme Court delineated the issue on certiorari for review as:

[W]hether the appeal would have failed as untimely to review the filed trial court order even if Dubuc had included his *in forma pauperis* affidavit with the rest of

---

4. In the same document he stated that he mailed the materials on March 23, 1999, so the only way that the documents could be "filed" two days before the deadline would be to apply the mailbox rule, which is not available in the CCA. *See* note 1.

5. Facilities are available at the law library to assist inmates with the preparation and filing of court matters.

6. The DOC report appears to be patterned after the procedure approved in *Martinez v. Aaron*, 570 F.2d 317 (10th Cir.1978). Under Federal law the U.S. District Court may dismiss the prisoner's action at any time on grounds such as the action is frivolous, malicious, or fails to state a claim upon which relief may be granted. 28 U.S.C. § 1915(e)(2)(B). The trial court in *Mar-*

*tinez* directed that an investigation be conducted and then to develop what amounted to an administrative record. Whether that procedure, which would essentially lead to a motion to dismiss or motion for summary judgment under state procedure, is appropriate in Oklahoma state courts in the absence of statutory authority is not in issue before this Court. Moreover, the record here developed apparently made no attempt to take evidence from the complaining party, Dubuc, as was done in *Martinez*. This failure left factual disputes unresolved, such as, whether Dubuc pursued his administrative grievance remedy before seeking District Court relief or whether such pursuit was futile and thus excused and whether he timely notified DOC personnel of his deadline.

the papers that were delivered to prison officials on March 23 for filing with the clerk of the Court of Criminal Appeals. *Dubuc*, 2001 OK 57 at ¶ 16, —— P.3d —— (pending release).

## ANALYSIS AND REVIEW OF QUESTION ON REMAND

 ¶ 22 First, this Court must, and cannot but, presume the Court of Criminal Appeals would *not* dismiss an appeal as untimely when, in fact, the appeal was timely. Thus, if the required documents to perfect an appeal of the Tulsa Case were received and filed by the deadline, then the appeal would not have been dismissed as untimely.[7]

¶ 23 The prison officials' investigation report (report) states Dubuc requested document preparation assistance on March 20, 1999, for his motion, petition in error and brief. He also requested assistance in preparation of his affidavit on March 22, 1999. According to the officials' report, the status of Dubuc's account had to be ascertained and the necessary information was received on March 23, 1999 at 3:36 P.M. The affidavit form was completed and returned to Dubuc on March 24, 1999. Then Dubuc asserts that he, on March 25, 1999, sought permission to FAX the affidavit to the Court. This permission was denied by prison officials. The prison mail log shows that Dubuc mailed a document to the Court of Criminal Appeals Clerk on March 25, 1999, which was the last and final day to file the appeal, as Dubuc well knew.

¶ 24 Dubuc states that he mailed the affidavit on March 25, 1999. Moreover, his statements in his materials supporting his and opposing Sirmonses' motion for summary judgment set forth a chronology consistent with the report.

¶ 25 Thus, all parties agree that the appeal papers, except for the affidavit, were pre-

pared and mailed by March 23, 1999, and the affidavit was finalized and mailed as of March 25, 1999. Other than the filing date of March 26, 1999, assigned by the Clerk, the record here does not reflect when any of the papers were actually received by the Clerk's office.

¶ 26 The *missing and unanswered fact* here is what is the date on which the papers mailed on March 23, 1999, were physically received by the CCA Clerk. Thus, inherent in the Supreme Court's statement of the issue, is the factual question: When were the materials that were mailed on March 23, 1999, physically received by the CCA? That question *cannot be answered* from the appellate record before this Court because it must be inferred that items mailed on one day are delivered in another locale of the state the next day or in a short time thereafter.

¶ 27 Consequently, the issue denominated by the Supreme Court as the "*dispositive issue* on certiorari" cannot be resolved on the record here before this Court. *Dubuc*, 2001 OK 57 at ¶ 11, —— P.3d —— emphasis original. Whether the appeal would have failed as untimely to review the filed trial court order even if Dubuc had included his fully completed *in forma pauperis* affidavit with the rest of the papers that were delivered to prison officials on March 23 for filing with the clerk of the Court of Criminal Appeals remains here as an unresolved question of fact.[8]

¶ 28 It is therefore necessary to delve further into the issues of this case in order to ascertain whether the dismissal and summary judgment entered in favor of Sirmonses was proper.

## STANDARD OF REVIEW

 ¶ 29 The appellate court has the plenary, independent, and nondeferential authority to reexamine a trial court's legal rul-

---

7. A person desiring to appeal an order denying post-conviction relief is required to file, with the Court of Criminal Appeals within 30 days of the order, a petition in error, supporting brief, and certified copy of the order. 22 O.S.1991, § 1087; Rule 5.2(C)(2), *Rules of the Oklahoma Court of Criminal Appeals*, Title 22, ch. 18, App. (1999). Although neither the Rule nor the Order Dismissing Dubuc's appeal mention provision for

payment of costs, the Court requires provision for costs as a necessary element of perfecting an appeal. *Dubuc*, 2001 OK 57 at ¶ 12, —— P.3d —— (pending release); *Behrens v. Patterson*, 1997 OK CR 76, ¶ 3, 952 P.2d 990, 991.

8. See note 4.

ings. *Neil Acquisition L.L.C. v. Wingrod Investment Corp.*, 1996 OK 125, 932 P.2d 1100, fn. 1. A trial court's dismissal for failure to state a claim upon which relief can be granted involves a *de novo* review to ascertain whether the petition, including its exhibits, is legally sufficient. *Indiana National Bank v. State Dept. of Human Services*, 1994 OK 98, 880 P.2d 371; *Gay v. Akin*, 1988 OK 150, 766 P.2d 985.

¶ 30 The appellate standard of review in summary judgment is *de novo. Kirkpatrick v. Chrysler Corp.*, 1996 OK 136, ¶ 2, 920 P.2d 122, 124. This means without deference. *Hulett v. First National Bank & Trust Co. in Clinton*, 1998 OK 21, 956 P.2d 879; *see Salve Regina College v. Russell*, 499 U.S. 225, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991). The pleadings and evidentiary materials will be examined to determine what facts are material and whether there is a substantial controversy as to one material fact. *Sperling v. Delay*, 1998 OK 81, 963 P.2d 577; *Malson v. Palmer Broadcasting Group*, 1997 OK 42, 936 P.2d 940. All inferences and conclusions to be drawn from the materials must be viewed in a light most favorable to the non-moving party. *Carmichael v. Beller*, 1996 OK 48, 914 P.2d 1051. Even though the facts may be uncontroverted if reasonable persons may draw different conclusions from these facts summary judgment must be denied. *Bird v. Coleman*, 1997 OK 44, 939 P.2d 1123. Summary judgment is proper only if the record reveals uncontroverted material facts failing to support any legitimate inference in favor of the non-moving party. *N.C. Corff Partnership, Ltd. v. OXY USA, Inc.*, 1996 OK CIV APP 92, 929 P.2d 288. When genuine issues of material fact exist summary judgment should be denied and the question becomes one for determination by the trier of fact. *Brown v. Oklahoma State Bank & Trust Co. of Vinita*, 1993 OK 117, 860 P.2d 230; *Flowers v. Stanley*, 1957 OK 237, 316 P.2d 840. Because the trial court has the limited role of determining whether there are any such issues of fact, it may not determine fact issues on a motion for summary judgment nor may it weigh the evidence. *Stuckey v. Young Exploration Co.*, 1978 OK 128, ¶ 15, 586 P.2d 726, 730.

¶ 31 One who defends against a claim and who does not bear the burden of proof is not required to negate the plaintiff's claims or theories in order to prevail on motion for summary judgment. When, as here, a defendant moves for summary judgment without relying upon an affirmative defense, the defendant must show that: 1) no substantial factual controversy exists as to at least one fact essential to plaintiff's theory of the cause of action; and, 2) the fact is in defendant's favor. Once a defendant has introduced evidentiary materials to establish these points, the plaintiff then has the burden of showing that evidence is available which justifies a trial of the issue. *Akin v. Missouri Pacific Railroad Co.*, 1998 OK 102, ¶ 8, 977 P.2d 1040, 1044; *Stephens v. Yamaha Motor Co., Ltd. Japan*, 1981 OK 42, ¶ 11, 627 P.2d 439, 441; *Runyon v. Reid*, 1973 OK 25, ¶¶ 12–13, 510 P.2d 943, 946.

¶ 32 On the other hand, when the defendant, as here also, relies upon an affirmative defense, then the defendant, as the party with the burden of proof, must meet the same standards as a plaintiff movant. *Akin*, 1998 OK 102 at ¶ 9, 977 P.2d at 1044.

## ANALYSIS AND REVIEW

### Dismissal Based Upon Relief Demanded

¶ 33 Even though an undocumented gap in the record exists concerning the date on which materials mailed on March 23, 1999, were physically received, the ultimate inquiry remains: What relief, if any, can be afforded Dubuc? [9] He has asked for reinstatement of his appeal and neither the trial court nor this Court has authority to grant such relief. He has requested a pardon or dismissal of his criminal conviction in the Tulsa Case. Again,

---

9. While the words "undocumented gap" were used, there is a strong probability that the reason the CCA's clerk did so was that he was acting in accord with the holdings in *Hunnicutt v. State*, 1997 OK CR 77, 952 P.2d 988, and *Behrens v.* *Patterson*, 1997 OK CR 76, 952 P.2d 990, by retaining the documents as received and did not process or "file" them until all required for filing were present and then did so.

that form of relief cannot be granted by the trial court or this Court.[10]

¶ 34 Dubuc's claim for these forms of relief were properly dismissed.

## Summary Judgment Review

### Defendants W. Morton, C. Morton, and Richards

 ¶ 35 Dubuc's only allegation against W. Morton is that W. Morton advised the staff, "Watch this one, he think's he's a lawyer, and he can push us around with his smart mouth lawyer stuff." There are no facts in the record to even infer that W. Morton was involved with any actions that Dubuc claims deprived him of access to the courts.

¶ 36 Defendant C. Morton is a case manager. Even Dubuc's version shows that this person in no way hindered but rather tried to assist him on the afternoon of March 25, 1999, by seeking to ascertain whether Dubuc could FAX his materials. Defendant Richards is a Warden's Assistant and he was called by C. Morton concerning use of the FAX. He merely checked on whether this was permitted and reported to C. Morton that inmates were not permitted use of the FAX machines.

¶ 37 Dubuc's claims against these persons are clearly mean spirited, frivolous and subject to dismissal with prejudice. 57 O.S. Supp.2000, § 566(A)(2). Summary judgment was proper as to each of the individuals, W. Morton, C. Morton and J. Richards.

## Summary Judgment Review

### Defendants Sirmons and Latimer

 ¶ 38 Record review reveals that Dubuc's appeal is here subject to the rule of *res judicata* for the reasons set forth in subsequent paragraphs.

¶ 39 The Oklahoma Supreme Court remanded this case for this Court to determine whether prison officials did anything in the processing of Dubuc's pauper's affidavit to thwart an appeal he was attempting to file with the Court of Criminal Appeals. In re-

manding this case, the Oklahoma Supreme Court directed that Dubuc be allowed to supplement the record. Dubuc, at his request, was allowed to supplement the record. One of the items that Dubuc provided in his supplement to the record was an order by the Court of Criminal Appeals denying him leave to file the appeal in question out of time.

¶ 40 The significance of this order is twofold and dispositive. First, it indicates that Dubuc was not absolutely precluded from pursuing his appeal simply because his initial filing of the appeal was not timely. Court of Criminal Appeals Rule 2.1(E)(1) allows an appeal out of time upon a showing that an inmate "was denied an appeal through no fault of his/her own." Secondly, the order reflects Dubuc sought review and relief set forth in Rule 2.1(E)(1) and that the Court of Criminal Appeals expressly heard and decided whether Dubuc was denied an appeal through no fault of his own. In making this determination, the Court of Criminal Appeals necessarily considered any fault by prison officials in handling or delaying the paupers affidavit.

¶ 41 The order denying Dubuc's leave to file out of time specifically addresses inmate Dubuc's allegation that "his application to appeal . . . was timely filed . . . but he failed to include a paupers affidavit [due to] delays in acquiring the information for the paupers affidavit that were beyond his control." The Court of Criminal Appeals noted Dubuc "does not explain why he waited . . . to finalize his appeal" and then ruled that there was "nothing in [Dubuc's] application to support his claim that he was denied an appeal through no fault of his own." The Court generally observed, "It is Petitioner's responsibility to comply with this Court's Rules when filing pleadings with this Court" and specifically stressed, "Timely submission of the required affidavit was Petitioner's responsibility." In other words, Dubuc's loss of access to the courts in the form of an appeal to the Court of Criminal Appeals occurred because he did not meet his burden to show the untimely appeal was due to fault by someone other than himself.

---

**10.** The CCA has exclusive jurisdiction in matters criminal in nature.

¶42 The process afforded by Rule 2.1(E)(1) gave Dubuc a full and fair opportunity to litigate any and all issues concerning "fault" for his untimely appeal, including "fault" on the part of prison officials (whether intentional or negligent) that was beyond his control. Having pursued this course to a final conclusion before the Court of Criminal Appeals, Dubuc cannot here again relitigate allegations of fault by the prison officials as a basis for a cause of action for denial of access to the courts.

¶43 Stated another way, a claim here in this Court against the prison officials for some "fault" on their part that may have affected Dubuc's access to the courts (i.e., appeal to the Court of Criminal Appeals) is precluded by a prior adjudication of this issue adverse to him. Therefore, any such claim by Dubuc (whether based on state law or § 1983) does not lie as a matter of law.

¶44 Therefore, the trial court was correct in dismissing the Defendants Sirmons and Latimer. The judgment of the trial court is affirmed.

¶45 AFFIRMED.

TAYLOR, J., and REIF, J. (sitting by designation), concur.