2014 OK CIV APP 86

**RURAL WATER DISTRICT NO. 1, COMANCHE COUNTY, Oklahoma, an agency and legally constituted authority of the State of Oklahoma; Rural Water District No. 2, Comanche County, Oklahoma, an agency and constituted authority of the State of Oklahoma; Rural Water District No. 3, Comanche County, Oklahoma, an agency and constituted authority of the State of Oklahoma; and Pecan Valley Waterworks Association, L.L.C., Plaintiffs/Appellants,**

v.

**CITY OF LAWTON, an Oklahoma Municipality, Defendant/Appellee.**

No. 111,017.

Court of Civil Appeals of Oklahoma, Division No. 1.

June 20, 2014.

Certiorari Denied Oct. 6, 2014.

Steven M. Harris, Douglas R. Haughey, Doyle, Harris, Davis & Haughey, Tulsa, Oklahoma, for Plaintiffs/Appellants.

---

Scott D. Meaders, Deputy City Attorney, Lawton, Oklahoma, for Defendant/Appellee.

WM. C. HETHERINGTON, JR., Vice–Chief Judge.

¶ 1 This appeal following summary proceedings arises from a dispute about charges assessed by The City of Lawton (City) for water sales to Rural Water District No. 1, Comanche County Water (Comanche–1), Oklahoma, Rural Water District No. 2, Comanche County, Oklahoma (Comanche–2), Rural Water District No. 3, Comanche County, Oklahoma (Comanche–3), and Pecan Valley Waterworks Association, L.L.C. (Pecan Valley) collectively, Plaintiffs. Plaintiff and City filed opposing motions for summary judgment. Under the record developed to date, summary judgment for any party is premature and inappropriate. The judgment in favor of City is REVERSED and the case REMANDED for further proceedings.

*STANDARD OF REVIEW*

¶ 2 Whether summary judgment was properly entered is a question of law which we review *de novo. Manley v. Brown,* 1999 OK 79, n. 30, 989 P.2d 448, 455. In determining whether summary adjudication was appropriate, we must examine the pleadings, depositions, affidavits and other evidentiary materials submitted by the parties and affirm if there is no genuine issue as to any material fact as a matter of law. *Perry v. Green,* 1970 OK 70, 468 P.2d 483. Our examination of the record and the trial court decision is *de novo, i.e.,* without deference to the lower court's determination. *Neil Acquisition, L.L.C. v. Wingrod Inv. Corp.,* 1996 OK 125, ¶ 5, 932 P.2d 1100, 1103. All inferences and conclusions to be drawn from the evidentiary materials must be viewed in a light most favorable to Plaintiffs. *Ross v. City of Shawnee,* 1984 OK 43, 683 P.2d 535.

¶ 3 Summary judgment is proper when there are no material facts in dispute. *Indiana National Bank v. State Department of Human Services,* 1993 OK 101, ¶ 10, 857 P.2d 53, 59. A court may look beyond the pleadings at evidentiary materials to decide whether there are any material facts disputed which remain for resolution by the trier.

*Id.* "The court may not weigh the evidence, but may only review the evidence to determine whether there is a factual dispute." *Id.; Stuckey v. Young Exploration Co.,* 1978 OK 128, ¶ 15, 586 P.2d 726, 730. "All inferences must be taken in favor of the opposing party. *Manora v. Watts Regulator Company,* [1989 OK 152, ¶ 9,] 784 P.2d 1056 (Okla. 1989)." *Seitsinger v. Dockum Pontiac Inc.,* 1995 OK 29, ¶ 7, 894 P.2d 1077, 1079. If reasonable people could differ as to the facts, the matter is not proper for summary judgment. *Indiana National Bank,* ¶ 10, 857 P.2d at 59.

¶ 4 "To prevail as the moving party on a motion for summary adjudication, one who defends against a claim by another must either (a) establish that there is no genuine issue of fact as to at least one essential component of the plaintiff's theory of recovery or (b) prove each essential element of an affirmative defense, showing in either case that, as a matter of law, the plaintiff has no viable cause of action." *Akin v. Missouri Pacific R. Co.,* 1998 OK 102, ¶ 9, 977 P.2d 1040, 1044. "[T]he inquiry on appeal concerning the propriety of the entry of summary judgment is limited to potential controversies concerning any issue raised by the pleadings." *Wabaunsee v. Harris,* 1980 OK 52, ¶ 9, 610 P.2d 782, 785.

*FACTS*

¶ 5 Plaintiffs claim City violated the terms of a 2006 Settlement of earlier litigation by imposing surcharges in the form of meter fees and imposed these fees without proper authority and in contravention of statutory requirements and municipal ordinances. Plaintiffs moved for summary judgment in their favor and injunctive relief. City filed a counter motion for summary judgment in its favor. Plaintiffs and City filed responses to each others' motions for summary judgment and motions to quash various affidavits and declarations. Plaintiffs also filed a "supplemental" motion for summary judgment, to which City filed a reply. The following allegations, claims, and facts are gleaned from these filings.

¶ 6 Comanche–1, Comanche–2, and Comanche–3 are rural water districts whose powers arise pursuant to 82 O.S.2001 § 1324.10, and each is an "agency and legally constituted authority of the State of Oklahoma pursuant to O.S.[Supp.1975] § 1324.6." Pecan Valley is licensed to do business in the State of Oklahoma. Plaintiffs purchase water for re-sale to customers or members who reside outside of City's limits.

¶ 7 In 2003, Plaintiffs (with two other entities, Medicine Park and Geronimo, who are not parties here) brought individual lawsuits against City which were subsequently consolidated and settled in Case No. CJ–2003–928. The only writings in the record evidencing the terms of the settlement is the transcript of the 2006 explanation of a "proposal" announced in open court and City's Resolution No. 06–172.[1] It is not disputed that under the 2006 Settlement Agreement, the rate for water was set at $3.00 per 1,000 gallons and future increases were subject to limitations. City also agreed to pay $100,000 in water credits in settlement of claims for rebates, refunds, court costs, attorney fees and remaining expenses over a three-year period to begin on July 1, 2007.

¶ 8 Plaintiffs contend the 2006 Settlement covers all costs associated with water purchases including fees, charges and surcharges and requires City to limit increases to "the same increase given to individual inside-the-city-limits residential customers," and "penny-for-penney, nickel-for-nickel, dime-for-dime, quarter-for-quarter, dollar-for-dollar" and "[n]ot a percentage; a—an actual penny-for-penny," as part of the on-the-record explanation of the settlement terms by the trial judge agreed to by the parties. City argues the 2006 Settlement is limited to the water rate per gallon and other costs and fees billed to Plaintiffs are not affected by the settlement.

¶ 9 City argues evidence offered by Plaintiffs to show surcharges were included in the 2006 Settlement are barred by the parole evidence rule. City contends the dismissal with prejudice of the earlier litigation had the transcript portion indicating the agreement as an exhibit and the dismissal was signed by the parties' attorneys. Plaintiffs contend that the parole evidence rule does not apply because there is no executed writing and the evidence is admissible pursuant to 15 O.S.2011 § 163 to explain the circumstances and matters to which the 2006 Settlement relates. They contend the reference to future increases contained in the testimony during a hearing on the 2006 Settlement encompasses four different rates, only one of which is the price per thousand gallons of water, and there was a separate agreement, also not in writing, regarding surcharge rates.

¶ 10 Plaintiffs contend City performed in accordance with the settlement from 2006 until August of 2011, when it charged a new and additional fee "premised on how the Plaintiffs made use of the water purchased" from City. They contend "[t]he particular use" of the water after it has been purchased at the master meter "has no impact on the cost to provide water" because City's cost is determined by the volume of water delivered, not how it is used after it is parsed out to members and customers who reside outside of City's municipal limits.

¶ 11 Comanche–2, Comanche–3, and Pecan Valley each receive water through separate, single master meters and water purchased by Comanche–1 is metered through three master meters. Each has paid surcharges on their master meters. Plaintiffs contend City violated the 2006 Settlement Agreement by imposing individual surcharges for submeters as to all or nearly all of its individual customers, resulting in water prices to those customers which are "vastly in excess of

1. According to the resolution, the plaintiffs alleged City and the Lawton Water Authority had "failed to follow the Oklahoma State Statutes, 11 O.S. 37–119 and 11 O.S. 37–119a." The city attorney was "authorized and directed to assist in the preparation of all necessary legal documents including but not limited to a Dismissal with Prejudice" and to "execute all necessary documents consistent with this resolution." The resolution references terms and conditions in an "Attachment 'A'," but the copies of the resolution in the record lack this attachment. Section 119a provides for municipal liability to water purchasers outside municipal limits for accounting costs relating to water sales if an enterprise accounting system is not used. No issue relating to recovery of accounting costs is raised in the current litigation.

rates charged 'individual inside-the-city-limits residential customers.'" They contend City has created an artificial distinction between them and the individual customers inside City's limits, increased the cost of water, effectively doubled the cost for at least one Plaintiff, and imposed the sort of unfair and "predatory pricing of water" which was intended to be resolved by the 2006 Settlement Agreement. Plaintiffs seek an injunction to prevent future violations of the 2006 Settlement Agreement, refunds of alleged overcharges paid, and a judicial determination of rights under the 2006 Settlement Agreement.

¶ 12 In response, City contends the settlement covered only the rate for the water itself and not any other fees or surcharges. City admits "that in 2011 it began implementation of a surcharge of $2.50 against each individual submeter that is capable of drawing water.from its facilities in order to help pay for the 2010 indebtedness incurred as a result of acquiring the remaining storage capacity rights to Lake Waurika."

¶ 13 City claims its "water contracts with Plaintiffs are in compliance with Title 11, Oklahoma Statutes, Section 37–119," and it may set rules and regulations governing "the setting of water rates and charges and contracts for the sale of water to different classes of customers." Since June 8, 1994, 11 O.S.2011 § 37–119(B) has provided:

B. All such water sold and furnished to persons or public or private entities outside the corporate limits of the municipality *shall be sold and furnished upon written contracts which shall provide for an annual review of the municipality's costs and contract modification of rates to permit rates to be increased or decreased to the purchasers as appropriate.* Any modification shall be nondiscriminatorily allocated between the municipality's customers and the purchaser. Provided, however, that only those costs that are attributable to maintaining the ability of the municipality to provide water service to the purchaser shall be included in purchaser's rates.

(Emphasis added.)

¶ 14 Confusingly, in its "Sixth Defense" to the Petition, City claims Plaintiffs' lawsuit "constitutes a violation of Title 11, Oklahoma Statutes, Section 37–120, which requires all water sold to customers outside corporate limits be sold only upon such terms and conditions as is agreed upon by negotiation between the parties." Plaintiffs contend the lack of negotiation with them is one factor rendering the surcharge invalid. Since July 1, 1978, this section has provided:

Any municipality owning or operating its own waterworks plant and every municipality engaged in the distribution of water may extend its lines beyond the corporate limits of such municipality and may acquire, construct, own, maintain and operate all necessary lines, apparatus and equipment, and acquire rights of way, and do all things necessary and proper in carrying on the business and furnishing water to any person, firm, corporation or other municipality beyond the corporate limits of the municipality, to the same extent as it may now do within the corporate limits of the municipality. *All water so sold and furnished to persons, firms, corporations and other municipalities beyond and without the corporate limits of the municipality so selling and furnishing the same shall be sold and furnished only under written contracts upon such terms and conditions as may be agreed upon by negotiation between the municipality and such persons, firms, corporations or other municipalities.* Nothing herein contained shall be construed to impose any duty or obligation upon any municipality to sell or furnish water to any person, firm, corporation or municipality beyond its corporate limits except as the municipality may expressly undertake by the terms of the written contract.

(Emphasis added).

Plaintiffs argue the lack of negotiation and contractual provisions for annual cost reviews render City's imposition of new surcharges as a violation of both § 37–120 and § 37–119.

¶ 15 Plaintiffs' contracts with City all specify that lines and meters after the master meters are private property for which Plaintiffs are responsible. City does not read, maintain or bill for any of Plaintiffs' submeters, all of which submeters are located out-

side the municipal limits. Comanche–2, Comanche–3, and Pecan Valley each receive water through separate, single master meters and water purchased by Comanche–1 is metered through three master meters. The Lake Waurika Surcharge came into existence in 2003 and Plaintiffs previously have paid the surcharge based upon the number of their master meters.

¶ 16 City classifies its water customers and sets fees and charges under different provisions of the Lawton City Code, Chapter A–22–2. Section 22–111 of that Code applies to residential, multiunit residential, business and government customers inside city limits and contains numbered subparts imposing charges "for each account for each unit" for addressing drainage, stormwater, and capital outlay all with exclusions for senior citizens and disability discount accounts. Section 22–111 also provides for surcharges "on each City of Lawton billing" to defray the costs of pumping and "the Waurika assessment."

¶ 17 Similarly, Section 22–112,[2] which applies to customers "outside city limits," contains unnumbered subparts providing that *"[i]n addition to the water rates listed in Section 22–112 of this Appendix,"* (emphasis added), there are surcharges "on each City of Lawton billing" to "defray the cost of pumping water" and to "defray the cost of the Waurika assessment." Section 22–112 also provides for a fee for each occupied unit for "capital outlay (Rolling Stock)" and for exemptions from the fee for "senior citizens and disability discount accounts" and "utility accounts which are provided service on a seasonal basis." Section 22–113 applies a minimum charge to "multiunit users" calculated by multiplying the number of units times a base rate and contains no subparts.

¶ 18 In 2006, City created a new classification, "wholesale customer," within Section 22–114 to implement the settlement's terms,

effective on December 1, 2006. It provides for a water rate of $3.00 per thousand gallons.[3] Other subparts of Section 22–114 apply to "[s]pecial contracts for large volume users" which have rates "[d]etermined by negotiation between parties," and a "[n]egotiated rate for Goodyear Tire and Rubber Company." There is no mention of surcharges of any kind within any subpart of Section 22–114 of the schedule of water rates.

¶ 19 City also sells water to 25 or 26 water associations, some of which are rural water districts and some not. Submeters for fifteen of these other associations are read and maintained by City. City does the billing for these associations for all the master meters and for some submeters.

¶ 20 In Ordinance No. 2011–20, adopted June 14, 2011, City amended "Section 22–1–2–114" to, *inter alia,* provide it may enter into written agreements with large-volume users "within or without the corporate limits of the city"; may temporarily waive volumetric requirements for "industrial customers" for the purpose of industrial development and negotiate a separate water rate under certain described conditions; requires "[w]holesale customers" to "pay the rate and monthly surcharges established by the city council in the fee schedule, Appendix A"; and states the term "[w]holesale customer is defined as a municipality as defined in Article 18 of the Oklahoma Constitution and Title 11 of the Oklahoma Statutes, a rural water district as defined in Title 82, Oklahoma Statutes, or a private water utility whose rates are regulated by the Oklahoma Corporation Commission." That same day, City passed Resolution No. 11–49, imposing "a portion of" the Lake Waurika Surcharge on the submeters served by the master meters of ten water associations and six wholesale customers not then paying a submeter surcharge

---

2. In Resolution No. 03–123, approved on June 24, 2003, Section 22–112 provided it set "Water rates outside City limits: commercial and industrial." The description "commercial and industrial" was eliminated in the Section 22–112 description by the time Resolution 06–193 was approved and Section 22–114 was created. Section 22–112 then provided for "Water rates outside city limits per 1,000 gallons or any part thereof."

3. This rate per thousand gallons has been raised several times since 2006. Those per 1,000 gallon increases were 8 effective July 1, 2007, 60¢ effective July 1, 2008, and 9¢ effective August 1, 2011, the same as the increases for those inside City's limits. No issue is presented on appeal as to those water rate increases.

and providing "Section 22–112. Article A–22–1, Appendix A, Schedule of Fees and Charges, Lawton City Code, 2005, is amended as set out in the attached Exhibit A." The attached Exhibit A for Article A–22–1, entitled WATER FEES AND CHARGES" and "22–112" provides, in pertinent part, that "[i]n addition to the water rates listed in Section 22–112 *and 22–114* of this Appendix" there is a surcharge on "*each master meter and active submeter on the master meter account read and maintained by the City of Lawton*" and a "*[s]urcharge for each active submeter on the master meter account NOT read and maintained by the City of Lawton.*" (Capitalization and underlining in original.) Plaintiffs filed this lawsuit on October 3, 2011.

¶ 21 In a February 23, 2012 deposition, City's finance director testified the Lake Waurika Surcharge is a flat amount calculated after looking at the number of customers and the payment due for the Lake Waurika water, not at the customer's consumption of water. According to this witness, large water purchasers such as Goodyear Rubber and Tire, which has two or three master meters, and Republic Paperboard, which has two master meters, are each charged one $6.50 Lake Waurika Surcharge based on their status as customers, not on their water consumption. At the time of the February 23, 2012 deposition of City's financial director, Goodyear paid a negotiated rate of $1.70 per 1,000 gallons under Section 22–114 and Republic Paperboard paid 72¢ per 1,000 gallons pursuant to a contract. The United States Army at Fort Sill has three pumping stations, is an out-of-the-city customer, pays one Lake Waurika Surcharge, and pays 72¢ per 1,000 gallons pursuant to a contract. The 72¢ rate is below City's cost for the water sold.

¶ 22 According to a Declaration by Comanche–1's office manager, Comanche–1 has 1,298 submeters, the recent $2.50 surcharge increases its monthly cost by $3,245, which it has paid twice ($6,490) and it incurred $933.00 for attorney fees. A Declaration by the office manager for Comanche–2 states it has 713 submeters, it paid an additional $1,782.50 on two occasions (a total of an additional $3,565.00), it incurred attorney fees in the amount of $4,3030.75, and it incurred charges of $100.00 to re-program its computer to adjust its customer billings. A Declaration from Comanche–3's office manager states it paid an additional sum of $2,115 for its 846 submeters on three occasions (a total of $6,345.00) and it incurred $2,942.75 in attorney fees prior to instituting its lawsuit. A Declaration of the manager of Pecan Valley states the limited liability company has 555 submeters, it has paid an additional sum of $4,162.50 ($1,387.50 on three occasions), and incurred attorney fees of $328.75.

¶ 23 City argues the 2006 Settlement Agreement covers only the water rate per 1,000 gallons. It claims that "prior to the 2006 Settlement Agreement each Plaintiff was billed for an existing Lake Waurika Surcharge on their master meters," a "pumping fee," and a "capital equipment charge," all of which were separately itemized. City claims Plaintiffs are "still responsible for the separately itemized charges associated with the Lake Waurika Surcharge, the pumping fee, and the capital equipment charge, which they have continued to pay." City argues these pre-existing charges at the time of the 2006 Settlement Agreement put Plaintiffs "on notice of the applicability of surcharges."

¶ 24 City claims commercial customers inside the municipality such as commercial buildings and apartment complexes pay the Lake Waurika Surcharge multiple times "based on the number of units a single meter supports since July 1, 2003." Although the new surcharge is assessed "per unit" for "inside-the-city" customers, it is "only applied to each utility customer rather than each unit," and the surcharge is assessed once a month on Plaintiffs' master meters. City states it incurred "approximately fifteen (15) million dollars in new and additional debt associated with acquiring the remaining water rights in the storage capacity at Lake Waurika" and the surcharge increase was enacted to help pay for the new debt.

¶ 25 City disputes Plaintiffs' claim they are being charged more than "inside-the-city limits residential customers" for the same volume of water in violation of the 2006 Settle-

ment Agreement. City claims that since 2006, "Plaintiffs have experienced the same per 1,000 gallon water rate increases" as City's "inside-the-city limits residential customers." City agrees Plaintiffs' "overall *cost* of water did increase as a result of application of the $2.50 Lake Waurika Surcharge against their submeters" but argues the rate per gallon increases were penny-for-penny **"just like the settlement agreement requires."** (Bold in original.) City claims the water sales contracts with Plaintiffs "specifically recognize" that each will buy water in accordance with the terms of each's agreement with City **"and the Lawton City Code, as now in existence *or amended.*"** (Bold and underlining in original.)

¶ 26 City denies Plaintiffs are entitled to injunctive relief and characterize their rate calculations as mixing apples and oranges. They contend the Lake Waurika Surcharge is not part of the water rate per 1,000 gallons and instead is a "non-rate element." City contends it has a constitutional, statutory, and contractual right to set water charges for all its customers and the 2006 Settlement Agreement did not abrogate those rights. City asserts it may assess new charges pursuant to amendments to the Lawton City Code.

¶ 27 City argues it made a legislative determination to require the ten water associations and seven wholesale customers not previously surcharged based on their submeters "to share on a more equitable basis, albeit it [sic] at a lesser amount ($2.50 as opposed to $6.50)" the 15 million dollar Lake Waurika debt and its determination was not manifestly unreasonable. Consequently, City contends, it is entitled to summary judgment in its favor.

¶ 28 Plaintiffs responded to City's counter motion, noting how, following the 2006 Settlement Agreement, they were placed in Section 10–22–114 for water rate assessment purposes by City of Lawton Resolution No. 06–193. They argue the 2010 changes in Resolution 10–57 apply to those customers in Section 10–22–112 (not Section 10–22–114). The also contend the Lake Waurika surcharge was not properly increased as to them due to notice problems for the meeting adopting the ordinance arising from references in the agenda to a "Section 22–1–2–114" (*i.e.* not to Section 10–22–114), and therefore City failed to follow statutes requiring the adoption of an ordinance before increasing the surcharge as to them. They further contend City did not follow the proper notice procedures of the Open Meetings Act and the attempt to impose a surcharge on their submeters is therefore invalid, citing *Okmulgee County Rural Water District No. 2 v. The Beggs Public Works Authority,* 2009 OK CIV APP 51, ¶ 15, 211 P.3d 225, 228–229.

¶ 29 Plaintiffs contend the latest surcharge on submeters "is nothing other than a discriminatory tax which the settlement agreement was intended to eliminate" and the result is disparate treatment compared to customers inside City due to "an effective water rate that is vastly in excess of rates charged 'individual inside-the city-limits residential customers.' " In their Petition, they also contend City's rate structuring is arbitrary, capricious and discriminatory. Plaintiffs seek refund of amounts attributable to the submeter surcharges and attorney fees incurred prior to filing their respective lawsuits due to "direct violation of the settlement agreement." Plaintiffs contend submeters of individual inside-the-city residential customers are really treated as master meters and assessments are not truly on these submeters but on units, *i.e.,* per customer. Further, they contend City has failed to comply with § 37–120 and § 37–119 by failing to negotiate new rates and to base such rates upon a written contract. City disputes Plaintiffs' "unit" analysis and contends that in 2006 Section 22–112 "simply stated 'The surcharge shall be billed **to each utility customer'**—not per unit." (Emphasis in original.) City contends Section 22–112 of the fee schedule as amended in 2011 is the authority "to now assess the Plaintiffs' submeters $2.50 per month as well." City contends provisions in their earlier written contracts acknowledge it may amend water rates. City also disputes Plaintiffs' characterizations of other wholesale customers as "similarly situated" and argues these other customers "are not wholesale customers like Plaintiffs" and instead are "large volume customers." City

contends "Goodyear, Republic Paperboard, and Fort Sill are not wholesale customers" and "all wholesale customers are treated the same."

## ANALYSIS

¶ 30 It is important to restate this appeal's applicable standard of review—all facts are to be taken in favor of the party opposing the motion for summary judgment and such a judgment should be granted only if there is no genuine dispute of material fact, making one party entitled to judgment as a matter of law but, if reasonable people could differ as to the material facts, the matter is not a proper subject for summary judgment. The court may not weigh the evidence or resolve disputed facts. "[T]he inquiry on appeal concerning the propriety of the entry of summary judgment is limited to potential controversies concerning any issue raised by the pleadings. *Wabaunsee v. Harris,* 1980 OK 52, ¶ 9, 610 P.2d 782, 785." *Graham v. Travelers Insurance Company,* 2002 OK 95, ¶ 8, 61 P.3d 225, 228.

¶ 31 As to the parties' agreement in 2006 in Case No. CJ–2003–928 the trial court states following an all-day settlement conference, announcing the "proposed settlement," subject to approval by City's Council, "[a]ll parties agree to comply with the provisions of 11—of all the Oklahoma Statutes and the federal and state constitutions." As the record presently stands at this stage of the proceedings, material facts are in dispute regarding compliance with this agreement and the parties' duties pursuant to statute. Plaintiffs claim City's rate classification structure results in artificial, arbitrary and capricious treatment of them and is inconsistent with treatment of other customers, thereby running afoul of § 37–119(B)'s requirement of nondiscriminatory rate modification. Material fact questions concerning compliance with applicable statutes remain for resolution and renders summary adjudication in favor of either party inappropriate.

¶ 32 Further, the surcharge "on each City of Lawton billing" assessed "to defray the cost of the Waurika assessment" in Section 22–112 is stated to be "[i]n addition to the water rates listed in Section 22–112 of this Appendix." However, the rate applicable to Plaintiffs is listed in Section 22–114, but City is billing for this assessment as to submeters included in the master meter bill. City has argued it made a "legislative determination" to impose the surcharge on the ten water associations and seven wholesale customers not previously paying it. City's authority to exercise this legislative authority *within* its municipal boundaries is not at issue in this dispute. However, as to *private property wholly outside* its municipal limits beyond the point of sale at the master meters to agencies and legally constituted authorities of the State of Oklahoma and licensed entities, such authority may not be created via passage of a municipal ordinance. City has not demonstrated a statutory or contractual basis for an extra-territorial extension of its authority to impose its municipal code and consequently is not entitled to judgment as a matter of law at this stage of the proceedings. In addition, there are material facts in dispute about which reasonable persons could differ as to the applicability of provisions Section 22–112 under the rate structure and the sufficiency of the notices given in 2011, regarding changes to the rate structure. *See generally, Okmulgee County Rural Water District No. 2 v. Beggs,* 2009 OK CIV APP 51, 211 P.3d 225.

¶ 33 On the appellate record presented, questions of material fact exist, reasonable people may differ as to those material facts, and no party is entitled to judgment as a matter of law. Summary judgment for any party is inappropriate. The judgment in favor of City is **REVERSED** and the case **REMANDED** for further proceedings.

JOPLIN, P.J., and BUETTNER, J., concur.